561 A.2d 863

**Michelle P. SULLIVAN, an individual, Appellant,**

v.

**CITY OF PITTSBURGH, DEPARTMENT OF PUBLIC SAFETY; Commander Ronald Shaulis, Appellees.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 17, 1989.

Decided July 25, 1989.

Petition for Allowance of Appeal Denied March 12, 1990.

340

Michelle P. Sullivan, Pittsburgh, pro se.

Gretchen G. Donaldson, Associate Sol., Pittsburgh, for appellees.

Before CRAIG and BARRY, JJ., and BLATT, Senior Judge.

## OPINION

BARRY, Judge.

Michelle P. Sullivan appeals an order of the Court of Common Pleas of Allegheny County denying her petition to examine a file of the City of Pittsburgh, Department of Public Safety. We affirm.

On October 29, 1987 Sullivan was the victim of a criminal assault. The crime was investigated by City of Pittsburgh Police. As of the date Sullivan filed her petition no arrests had been made in the case. Sullivan was denied access to the investigation and case file by the City Police. She then petitioned the trial court for access to the file. After a hearing the trial court denied the petition. Sullivan now appeals to this Court.

■ Sullivan sought access to the police file pursuant to the Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4, commonly referred to as the Right-to-Know Act (Act). Section 2 of the Act provides, "Every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. § 66.2. The question presented in the case before us is whether records of police investigations are "public records" within the meaning of the Act. We conclude that they are not.

Section 1(2) of the Act provides:

'Public Record.' Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: *Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties,* except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal

security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

65 P.S. § 66.1(2) (emphasis added).

It is clear to this Court that police records and files of ongoing investigations are excluded from the Act's definition of "public record" pursuant to the language highlighted above.

A similar conclusion was reached by the Superior Court in *Barton v. Penco,* 292 Pa.Superior Ct. 202, 436 A.2d 1222 (1981). In *Barton* a police officer was accused by an unidentified complainant of receiving stolen property. After an internal investigation had been conducted by the police department the accused police officer sought to review the contents of the investigation file. His request for review was denied and he filed an action in common pleas court. The trial court denied relief and an appeal was filed with the Superior Court. That Court concluded that the file was excluded from the Act's definition of "public record" pursuant to the same language under which we now exclude the file sought to be examined by Sullivan in the case before us.

The conclusion we reach with respect to the exclusion of police investigation reports from "public records" was the basis upon which the trial court denied the relief sought by Sullivan. She challenges that analysis on several grounds.

█ First, she argues that no active investigation had been conducted with respect to the file for some eighteen months prior to her request and accordingly the investigation was not ongoing. She goes on to reason that the absence of an ongoing investigation has the effect of removing the applicability of the exception from that file. We disagree.

The language of the statute does not specify that investigations must be ongoing in order for their files to be

excluded from the definition of "public records." In fact, however, the exception may apply to completed investigations. The Act excludes from the definition of "public record," "any report ... which would disclose the ... *result* of an investigation...." 65 P.S. § 66.1(2) (emphasis added). Clearly, the exclusion extends to files on completed investigations, *i.e.*, those in which a "result" has been reached. Accordingly, Sullivan's argument that the investigation was no longer ongoing is of no assistance to her position.

Second, Sullivan argues that the Federal courts have taken a much broader view of the definition of public records. We note, however, that all of the cases cited in Sullivan's brief on this issue were decided pursuant to interpretations of provisions of the Freedom of Information Act, 5 U.S.C. § 552. The federal statute takes a more restrictive view of law enforcement records as an exception to the general rule of the availability of information to the public. That statute provides:

(b) This section does not apply to matters that are—

(7) records or information compiled for law enforcement purposes, *but only to the extent* that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations and prosecutions, or would disclose guidelines for

law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of an individual[,] 5 U.S.C. § 552(b)(7) (emphasis added).

Clearly, cases applying and interpreting this more restrictive statute are inapplicable to an interpretation of our Pennsylvania statute.

We must note that while we deeply sympathize with the victim of a criminal act who wishes to be assured that all possible steps are being taken by law enforcement officials to solve the crime we cannot conclude that our Right-to-Know Act provides any relief. Accordingly, we are constrained to affirm the trial court.

## ORDER

NOW, July 25, 1989, the order of the Court of Common Pleas of Allegheny County at CC No. Misc. 349–Sept. 88 dated October 6, 1988, is hereby affirmed.