572 A.2d 1319

**CITY OF CHESTER, and Mayor Willie Mae Leake, Councilman Michael Koterba, Councilman Stephen McKellar, Councilman William Waldron, Councilman Edward Zetusky, City Council of the City of Chester, Appellants,**

**v.**

**Andi GETEK and Central State Publishing Inc. t/a Delaware County Daily Times, Appellees.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 12, 1989.

Decided April 9, 1990.

John W. Nails, Chester, for appellants.

Donald T. Petrosa, Media, for appellees.

Before CRAIG and SMITH, JJ., and BARBIERI, Senior Judge.

SMITH, Judge.

The City of Chester [1] (City) appeals an order of the Court of Common Pleas of Delaware County sustaining the appeal of Andi Getek and Central States Publishing, Inc. t/a Dela-

1. Also appealing are Mayor Willie Mae Leake and City Council Members Michael Koterba, Stephen McKellar, William Waldron and Edward Zetusky.

ware County Daily Times (Times). Getek, a reporter for the Times, sought and was refused the right to examine, inspect and copy real estate appraisals pertaining to properties acquired by the City or to be acquired in connection with the City's Resource Recovery Project. The trial court order is affirmed.

In October of 1987, the City designated an area approximately two blocks wide by fourteen blocks long as a future site for a Resource Recovery Facility which would convert trash to steam and perform recycling operations. Thereafter, the City engaged the Associated Real Estate Appraisal Group to perform appraisals on residential properties located within the designated area. During 1988, the City Council passed a series of resolutions directing the City to enter into purchase agreements with the owners of the residential properties in the designated areas "for the amounts indicated in the appraisals done by the Associated Real Estate Appraisal Group for the properties which have been attached to this resolution...."[2] Attached to each resolution is an exhibit listing the address of each property and a dollar value represented to be the amount of the appraisal.

The Times requested that the City provide copies of all appraisals done on residential properties already acquired or to be acquired by the City. This request was denied, and the Times filed an appeal to the trial court from the denial pursuant to Section 4 of the "Right–to–Know" Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. § 66.4. Following hearing, the trial court granted the Times' appeal allowing examination of the appraisals done on all properties to which the City had acquired legal or equitable title or entered into an agreement of sale. The trial court denied the request for disclosure of appraisals related to properties still under negotiation, reasoning that disclosure could prejudice the City in its negotiations with property owners. The City was ordered to disclose the appraisals for these

---

**2.** All eleven resolutions in the record contain this language and were passed between January 27, 1988 and November 2, 1988.

properties at such time as it did acquire title or enter into an agreement of sale.

Section 1 of the Right–to–Know Act, 65 P.S. § 66.1(2), defines public record as follows:

Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons....

Section 1 also defines certain exceptions to this definition:

[T]he term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties ...; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute, law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security....

■ The City first argues that the appraisals do not fall within the definition of public record as they are neither accounts, vouchers, contracts, minutes, orders or decisions fixing personal or property rights.[3] However, the information contained in the appraisals reflects the factual information upon which the disclosed appraisal amounts were based which by resolution were adopted by the City. This Court has previously found documents to be public records if they form the basis for an agency decision. *Patients of Philadelphia State Hospital v. Department of Public Welfare,* 53 Pa.Commonwealth Ct. 126, 417 A.2d 805 (1980); *Young*

---

**3.** This Court's scope of review is limited to a determination of whether the grant or denial of a request for information was for just and proper cause. *Aamodt v. Pennsylvania Department of Health,* 94 Pa.Commonwealth Ct. 54, 502 A.2d 776 (1986).

*v. Armstrong School District,* 21 Pa.Commonwealth Ct. 203, 344 A.2d 738 (1975); *Westmoreland County Board of Assessment Appeals v. Montgomery,* 14 Pa.Commonwealth Ct. 50, 321 A.2d 660 (1974). Inasmuch as the appraisals provide the basis for the determination of the price the City was willing to pay for these properties, they constitute an essential component of an agency decision fixing the personal or property rights of a group of persons. *Patients of Philadelphia State Hospital.*

■ The City next contends that the appraisals fall within the exceptions to Section 1 arguing that 1) the appraisals are the reports of the appraisers following their inspections of the properties; 2) inspections are, in effect, investigations; and 3) the Right–to–Know Act bars disclosure of investigative communications. The Times, disputing that the appraisals are the type of investigation contemplated by the exception, argues that the City has already disclosed the result of the appraisals by including the appraisal amounts in its resolutions. This Court agrees that the appraisals "are not of the sort envisaged by the field investigation exception of the Act ... the discovery of which would compromise the performance of an official agency...." *Marvel v. Dalrymple,* 38 Pa.Commonwealth Ct. 67, 75, 393 A.2d 494, 498 (1978).

■ Finally, the city argues that disclosure of the appraisals would violate the Fourth Amendment rights of each property owner to be secure in their homes from unnecessary government intrusion. Citing several criminal cases, the City argues that the Fourth Amendment protects the property owners from publication of information which will describe the insides of their homes or former homes. The trial court, relying on *Young,* disposed of this argument reasoning that the Right–to–Know Act does not contain any language protecting against the invasion of an individual's privacy:

The Right to Know Act, however, contains no clause or provision to protect against the invasion of an individual's privacy as does the Federal Freedom of Information Act,

5 U.S.C. § 552, and for us to equate a concept of privacy with the concept of 'personal security' would usurp the legislative prerogative of the General Assembly.... The concept of personal security, we believe, involves protection from personal harm rather than protection from an invasion of privacy.

*Young,* 21 Pa.Commonwealth Ct. at 207, 344 A.2d at 740. Further, in order for records to fall within the personal security exception, this Court has held that they must be intrinsically harmful and not merely capable of being used for harmful purposes. *Moak v. Philadelphia Newspapers, Inc.,* 18 Pa.Commonwealth Ct. 599, 336 A.2d 920 (1975). Accordingly, this Court agrees with the trial court that the appraisals sought by the Times constitute public records subject to disclosure under the Right–to–Know Act.

## ORDER

AND NOW, this 9th day of April, 1990, the order of the Court of Common Pleas of Delaware County is affirmed.