638 A.2d 422

**PG PUBLISHING COMPANY, Observer Publishing Company**

**v.**

**COUNTY OF WASHINGTON, Paul Belcastro, Controller of the County of Washington and The County of Washington, Pennsylvania.**

**Appeal of COUNTY OF WASHINGTON, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1993.

Decided Feb. 24, 1994.

198

Melvin B. Bassi, Washington County Sol., for appellant.

Perry A. Napolitano for appellee, P.G. Pub. Co.

Stephen D. Marriner, Jr., for appellee, Observer Pub. Co.

Robert L. Knupp for amicus curiae, Pennsylvania State Ass'n of County Com'rs.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

County of Washington and Paul Belcastro, Controller of the County of Washington (collectively, County) appeal from the Court of Common Pleas of Washington County's order compelling the County to produce its Cellular One telephone records requested by PG Publishing Co.[1] and the Observer Publishing Co.[2] (collectively, Newspapers) pursuant to Section 4 of the Right to Know Act (Act), Act of June 21, 1957, P.L. 390, 65 P.S. § 66.4. We affirm, as modified.

## HISTORY

In the summer of 1993, Newspapers [3] requested the County to provide itemized Cellular One telephone billing statements for the years 1991, 1992 and 1993. This request included all pages and documents accompanying the monthly bills, and all documents received by the County regarding its accounts with Cellular One.

By letter dated June 21, 1993, the County refused Newspapers' request, stating that absent "some urgent, compelling

1. PG Publishing Co. publishes the *Pittsburgh Post–Gazette,* a newspaper of wide circulation, particularly in Allegheny and Washington Counties.

2. The Observer Publishing Co. publishes the *Washington Observer Reporter,* a newspaper of wide circulation in Washington County.

3. Newspapers originally made their requests independently, PG Publishing making its request first followed soon after by Observer Publishing's request. Because the actions followed essentially the same course of events and the trial court eventually consolidated the cases, we will describe the events as occurring simultaneously and continue to refer to PG Publishing and Observer Publishing collectively as Newspapers.

reason we believe it totally within the proprietary interests of government to give only summaries and not allow view of the specific bill in question." (134a).

Newspapers filed a statutory appeal in the Court of Common Pleas of Washington County pursuant to Section 4 of the Act, challenging the County's refusal to provide access to the entire bill. The trial court conducted an expedited evidentiary hearing, which included argument by the parties' counsels. Essential to the resolution of this matter is a synopsis of pertinent facts as found by the trial court.

Twenty-one cellular phones are assigned to various County governmental departments and public officials, including the Health Center, EMS Service, Administration, Sheriff, Coroner, District Attorney, District Attorney Drug Task Force Agency (Drug Task Force), and the three County Commissioners.

The phone bills are broken down into two major sections. The first is a "summary" section which sets forth the total dollar amount owed by the County for the month, the current monthly activity of each cellular phone, the assigned phone number and the total charge of each phone for the month.

The second section is an itemization of calls made by each cellular phone indicating the number called, the city, time, date, amount of air-time and cost per call (itemization). Incoming calls are also recorded by date and amount of air-time as a fee is paid for all calls received, but neither the caller's number nor location is provided on the itemization.

No distinction appears on the itemization as to what calls are "County business-related" or "personal." Various public officials testified that under the "honor system," they have reimbursed the County for "personal" calls. However, the trial court found that this reimbursement for personal calls has no bearing on the issue of whether or not the documents requested are "public records" under the Act. The trial court also synopsized the testimony of four County officials as follows:

Testimony from the District Attorney, John C. Pettit, indicated that as a result of the publication, all of the cellular phone numbers relating to his office (approximately 7) had to be changed, due to the nature of the work performed by the District Attorney (ongoing criminal investigations/prosecutions). Mr. Pettit also testified that disclosure of his office's cellular numbers and/or a list of itemized billings for those numbers would jeopardize the safety of law enforcement officers under his control and, more importantly, put at risk *ongoing criminal investigations,* especially those in the Drug Task Force Unit as they could be discovered and identified.

In addition, calls to and involving confidential informants using those numbers in drug related investigations would be jeopardized, along with their personal security. The reason being the itemized statements set forth the phone numbers called, and, if published, confidential informants' identities would be compromised and, obviously, their personal safety would be in jeopardy along with hampering the district attorney's drug investigation work.

Coroner Timothy Warco and Sheriff James Fazzoni testified that their offices had only one cellular phone, used by themselves. Coroner Warco indicated his office dealt with death and the possible criminal involvement of individuals surrounding death and, therefore, due to the sensitive nature of these circumstances, he objected to the release of any itemized statements on his cellular phone usage.

Similarly, Sheriff Fazzoni testified that the use of his phone is essential to law enforcement, as he receives calls from the District Attorney, state and local police requesting his assistance in various criminal matters which would likewise not merit revealing.

(Trial court opinion at 5–6) (emphasis in original). On August 24, 1993, the trial court issued an order and opinion granting, with limited exceptions, public access to the County's entire monthly Cellular One telephone bills, including itemizations. The order states, in pertinent part:

All cellular phone records of Washington County, both summary and itemized billings, currently numbering twenty-one (21) are public records, pursuant to 65 P.S. § 66.1(2) and are subject to examination and inspection and/or copying pursuant to 65 P.S. §§ 62–2–66.3, by any citizen of this Commonwealth. Paul Belcastro, Controller of the County of Washington in the lawful custodian of such records, shall adopt and enforce reasonable rules and time for such inspection, examination, and/or copying. Any copying of said documents will be at the cost of the individual or entity requesting same.

However, the District Attorney and the Drug Task Force Unit under the supervision of the District Attorney is permitted to redact, remove, or obliterate those telephone numbers involving active criminal investigations and/or numbers of confidential informants including the cellular numbers assigned to the District Attorney's office.

On August 25, 1993, Newspapers again requested copies of the County's Cellular One telephone bills from the Controller. The Controller refused to provide these records and, on September 9, 1993, the County filed its notice of appeal to this Court.[4]

■ The County, in its appeal, argues that the trial court erred as a matter of law in holding that the Cellular One itemization is a "public record" which may be "open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." Section 2 of the Act, 65 P.S. § 66.2. Because all parties have conceded that the County is an agency,[5] we will begin our analysis by reviewing the trial

**4.** The filing of the notice of appeal created an automatic supersedeas in favor of the County pursuant to Pa.R.A.P. 1736(b), staying the trial court's order. Both the trial court and this Court denied requests to have the automatic supersedeas lifted.

**5.** An agency is "any department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for

court's conclusion that the Cellular One itemization was a "public record" within the definition set forth in the Act.[6]

## PUBLIC RECORD

Section 1(2) of the Act, 65 P.S. § 66.1(2), defines a "public record" as:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property *and* any minute, order or decision by an agency fixing the person or property rights, privileges, immunities, duties or obligations of any person or group of persons....

(Emphasis added). The County contends that the documents requested do not fall under the definition of a "public record" because the itemization of the Cellular One phone bill is not an "account, voucher or contract," but is either work product or an internal memoranda between non-decision makers.[7]

■ The County does not challenge the premise that bills paid for by a county are a "public record," *Carbondale Township v. Murray*, 64 Pa.Commonwealth Ct. 465, 440 A.2d 1273 (1982), but rather asserts that only the summary of the charges is the "bill" and that the itemizations requested by Newspapers are only the detailed supporting documents, created for internal accounting, i.e., work product, and do not fall under the definition of "public record." The County cites

its purpose the performance of an essential governmental function." Section 1(1) of the Act, 65 P.S. § 66.1(1).

6. Our scope of review under the Right-to-Know Act is limited to determining whether the agency's denial of the request for the desired information was for just and proper cause. Section 4 of the Act, 65 P.S. § 66.4; *City of Chester v. Getek,* 132 Pa.Commonwealth Ct. 394, 397 n. 3, 572 A.2d 1319, 1320 n. 3 (1990).

7. The amicus briefs filed in support of the County's position by the Pennsylvania District Attorneys Association (PDAA) and the Pennsylvania State Association of County Commissioners (PSACC) concede the argument that the itemization in the telephone bills is a public record. PDAA and the PSACC focus their argument instead on the premise that these itemizations are exempt for reasons we will explore later in this opinion.

*Nittany Printing and Publishing Co. v. Centre County Board of Commissioners,* 156 Pa.Commonwealth Ct. 404, 627 A.2d 301 (1993),[8] and *Vartan v. Department of General Services,* 121 Pa.Commonwealth Ct. 470, 550 A.2d 1375 (1988),[9] for the proposition that work product is not a "public record," unless it forms the basis for an executive or legislative decision. We do not agree.

First, the itemization itself was actually compiled by Cellular One rather than by the County. Second, Controller Belcastro admitted that he did little or no work with the actual itemization but merely paid the amount set forth on the summary sheet.

Most importantly, however, the County also contends that the itemization is not open for public examination and inspection because it does not form the basis for a decision, fixing rights which it concedes would make the itemizations available for inspection under the Act.

The entire argument that the itemization is work product because it does not form the basis of a decision and, thus, not a public record, is premised on a misreading of the Act. The Act differentiates between public records in the form of accounts or vouchers, as we have here, and those in the form of a minute, order or decision fixing rights. *Nittany Printing* and *Vartan* both address that portion of the statute concerning minutes, orders or decisions fixing rights, rather than the documents reflecting accounts or vouchers and the use of public equipment and funds.

8. *Nittany Publishing* concerned a request by a newspaper to examine and inspect a legal opinion given to the Commissioners by its solicitor. We held that the legal opinion was not a "public record" because the opinion was not a pre-requisite to an agency making a decision but was only "advice" and not "essential" to the agency decision.

9. In *Vartan,* a disappointed bidder requested information, including correspondence and memoranda, about the selection of the successful bidder. The Department of General Services refused to release some of the requested information stating that it was not discoverable because it was not a "public record," as defined by the Act. We affirmed, holding that correspondence and memoranda are not lists, compilations of facts or statistical data which are normally discoverable under the Act.

In *Steele v. Department of Environmental Resources*, 120 Pa.Commonwealth Ct. 510, 548 A.2d 1337 (1988)[10], which the County cites in its argument on this point, our Court explicitly recognized the distinction between the two parts of the definition of a "public record" stating:

> Because there is no claim that the document here constitutes an "account, voucher or contract", our review focuses on that portion of the definition which embraces: "any minute, order or decision by an agency fixing personal or property rights, privileges, immunities, duties or obligations of any person or group of persons."

*Id.* at 513, 548 A.2d at 1338 (citation omitted); *see also Pennsylvania Association for Children and Adults with Learning Disabilities v. Department of Education*, 91 Pa.Commonwealth Ct. 531, 498 A.2d 16 (1985) (recognizing two aspects of definition of public record).

By contrast, where, as in this case, the County's cellular telephone bills clearly do constitute accounts and/or vouchers evidencing a contract and deal with the use of County equipment, discussion of whether the documents reflect a decision "fixing" the status of an individual is inapplicable. Thus, the County's argument that the third party communications, i.e., from Cellular One to the County, are not proximate to decision making and are thus, not public documents is inapposite. As the trial court noted, it is axiomatic that all bills or statements which contain an itemization regarding how the total amount is arrived at is an integral part of the final bill without which payment would probably not be made.

Therefore, we hold that the trial court did not err in holding that the entire bill, including itemization, constituted a "public record" under the Act.

**10.** In *Steele,* a citizen requested that the Department of Environmental Resources (DER) allow examination of a memorandum written by an assistant attorney general to a DER employee. DER denied that request and our Court ruled that the memorandum was not a public document because the communication was from advisors outside the DER relating to DER projects and does not have the characteristic of a decision fixing the status of an individual, because the advisors were not decision makers within the DER.

## EXCEPTIONS

Absent some exception, then, the Cellular One telephone billings here qualify as a "public record" within the meaning of Section 1(2) of the Act.

This same section of the Act, however, delineates exceptions to the requirement of access or, more particularly, the type of document that although meeting the definition, is not available for examination and inspection as a "public record." These exceptions are:

1. Any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties;

2. Any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court;

3. Any document which would operate to the prejudice or impairment of a person's reputation or personal security; or

4. Any document which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or state or municipal authorities of federal funds.[11]

## I. INVESTIGATION EXCEPTION

The trial court's order allowed the District Attorney and Drug Task Force to redact from the Cellular One itemizations, telephone numbers that relate to "active criminal investigations." It did not allow the Sheriff or Coroner to redact any numbers. The trial court specifically found that the testimony of the Sheriff and Coroner showed *neither* an eminent risk of harm nor that "any existing or *on-going investigation* by the officials would be disclosed or jeopardized." (Trial court opinion at 11–12) (emphasis in original). The trial court noted that "while the Sheriff and Coroner do touch upon the 'criminal element' in their work and there may

---

11. The exception relating to the loss of federal funds is not relevant here. But, in varying degrees, all of the other exceptions are relevant.

obviously be some risk of harm to them in the performance of their duties, it was not shown that disclosure of the said cellular telephone billings would affect these exceptions. Sensitivity in the nature of the communication (i.e., document or phone bills) is not an enumerated exception." *Id.* at 12 n. 3.

The County asserts that the trial court erred in using the standard of an "active criminal investigation" because the language of the Act pertaining to the investigation exception does not contain any language restricting the exception to active, on-going investigations. The County argues that not only should the District Attorney and Drug Task Force be permitted to redact, but that the Sheriff and Coroner should also be permitted to redact the phone numbers called that concern "*the institution, progress or result of an investigation* as the Act provides." (Emphasis added). We agree.

First, no requirement exists in Section 1(2) of the Act that the investigation be "active." In *Sullivan v. Pittsburgh, Department of Public Safety,* 127 Pa.Commonwealth Ct. 339, 342–43, 561 A.2d 863, 865 (1989), *appeal denied,* 525 Pa. 591, 575 A.2d 120 (1990), we held that:

> The language of the statute does not specify that investigations must be ongoing in order for their files to be excluded from the definition of 'public records.' In fact, however, the exception may apply to completed investigations.

Thus, we hold that the trial court erred in holding that redaction of telephone numbers by the District Attorney and the Drug Task Force must be limited to numbers concerning "active criminal investigations." Therefore, we modify that portion of the trial court's order allowing redaction by the District Attorney and Drug Task Force of numbers concerning "active criminal investigations" to read instead that the District Attorney and Drug Task Force may redact telephone numbers involving the "institution, progress or result of an investigation."

Further, County argues that because the Legislature has empowered the Sheriffs and Coroners of this state with duties concerning investigations that these entities should have the

opportunity to redact telephone numbers under the same standard we now hold applies to the District Attorney and Drug Task Force, i.e., redaction of numbers that concern the "institution, progress or result of an investigation." Newspapers counter stating that for the exception to apply, the telephone bills at issue must *disclose* the "institution, progress or result of an investigation undertaken by an agency in the performance of its official duties...." Newspapers contend just because a number is disclosed does not demonstrate the "institution, progress or result of an investigation." Newspapers assert that none of the County's witnesses even hinted at how the release of the telephone numbers listing numbers called, without revealing substance of conversations, could disclose the "institution, progress or result" of any investigation in which the officials are involved and that the County's itemizations are simply not the types of documents "envisioned by the field investigation exception." *Marvel v. Dalrymple*, 38 Pa.Commonwealth Ct. 67, 393 A.2d 494 (1978) (papers relating to promotion tests for police officers are not field investigation documents, but information used to make a decision).

The trial court did not find that the Sheriff's and Coroner's telephone calls rose to a level so as to trigger the investigation exclusion and stated "while the Sheriff and Coroner do touch upon the 'criminal element' in their work and there may obviously be some risk of harm to them in the performance of their duties, it was not shown that disclosure of the said cellular telephone billings would affect these exceptions." Trial Court opinion at 12, n. 3. Neither the Sheriff nor Coroner testified to *any* specific investigation wherein a call made on their cellular phone would reveal "the institution, progress or result of an investigation." Because the trial court's finding that the itemizations did not disclose "the institution, progress or result of an investigation" is supported by substantial evidence, we affirm the trial court on this issue.[12]

12. The trial court also supported its reasoning for denying the Sheriff and Coroner the right to redact phone numbers on the basis that the County failed to prove that the release of the telephone numbers of such

## II. STATUTE LAW/ORDER/DECREE EXCEPTION

### A. *Invasion of Privacy*

█ The County next argues that allowing public access to the itemizations would be an invasion of privacy not only of the public officials but of the individuals called from the cellular phones. While acknowledging that the right of privacy is not delineated expressly in our United States or Pennsylvania Constitutions, the County asserts that the right of privacy encompasses and embraces various rights inherent in the concept of a democratic society. Newspapers assert, however, that the County presents this constitutional question for the first time before this Court and thus, has waived its right to make this argument citing *In re Jim Thorpe Borough Liquor Store Protest,* 83 Pa.Commonwealth Ct. 598, 478 A.2d 155 (1984). While the County may not have specifically argued that there is a constitutional right to privacy in telephone numbers, it certainly inferred this argument sufficiently for the trial court to state that the County admitted that the right of privacy is not "expressly set forth in either the United States or Pennsylvania Constitutions." Trial court opinion at 13. While the trial court did not develop this issue, we will not hold that this argument has been waived as Newspapers suggest. Thus, we must consider whether privacy concerns justify denying the public the opportunity to monitor the conduct of public officials using government facilities at taxpayers' expense.

█ The purpose of the Right-to-Know Act is to scrutinize the acts of public officials, making the officials accountable in their use of public funds. Heralding the importance of the goals of the Act, this Court recognized that "[c]onsiderations of privacy and confidentiality, must yield to the public's right to know about and examine into its servants' performance of duty." *Kanzelmeyer v. Eger,* 16 Pa.Commonwealth Ct. 495, 500, 329 A.2d 307, 310 (1974). In *Culver v. Port Allegany*

investigation would "operate to the prejudice or impairment ... of personal security." This combines two separate enumerated exceptions which is an improper application of the Act.

*Reporter Argus,* 409 Pa.Superior Ct. 401, 598 A.2d 54 (1991), *appeal denied,* 533 Pa. 600, 617 A.2d 1274 (1992), the Superior Court considered a challenge to privacy rights in the publication of information about the expenditure of tax dollars for a third-grader's psychological evaluation, stating:

> The common law has long recognized that the public has a proper interest in learning about many matters. When the subject-matter of the publicity is of legitimate public concern, there is no invasion of privacy. Included within the scope of legitimate public concern are matters of the kind customarily regarded as news.

*Id.* at 404, 598 A.2d at 56 (citations omitted).

However, in a recent decision, this Court reasoned that, although the legislature failed to establish affirmatively a personal privacy right under the Pennsylvania Constitution, it could be inferred that such a right existed in light of the cumulating precedent. *Times Publishing Co. v. Michel,* 159 Pa.Commonwealth Ct. 398, 633 A.2d 1233 (1993). *Times Publishing* specifically addressed the issue of whether portions of firearm application records that disclose applicants' addresses, telephone and social security numbers should be withheld because the information may compromise *personal security.*[13] We held that in analyzing the *personal security exception* to the Act, we must apply "a balancing test, weighing privacy interests and the extent to which they may be invaded, against the public benefit which would result from disclosure." At 410, 633 A.2d at 1239.[14] The type of privacy interest envisioned in *Times Publishing* suggests a unique hybrid case, because the privacy right is totally married and even arguably intertwined with personal security interests due to the subject matter of inquiry—the application of a permit for a deadly weapon. Here, security risks have been eliminated through redaction. Further, *Times Publishing* dealt with

13. At this point, we must reiterate that another, separate exception is the personal security/reputation exception to the right of access to a "public record."

14. Judges McGinley, Palladino and Pellegrini did not agree that the telephone numbers fall under the personal security exception. 159 Pa.Cmwlth. at 402, 633 A.2d at 1235.

personal information provided to a public agency by private individuals. Here, the only arguably private information is the itemization which reveals which telephone numbers tax dollars were spent to call. Thus, *Times Publishing* does not require the telephone numbers here be kept confidential.

█ Finally, in *Morning Call, Inc. v. Lower Saucon Township*, 156 Pa.Commonwealth Ct. 397, 627 A.2d 297 (1993), we held that a settlement agreement entered into between a public agency and a private individual constituted a public record, regardless of the fact that the parties had agreed to keep the terms of the agreement confidential. Basically, *Morning Call* dictates that if public money is spent then the Act entitles the public to know where this money goes. We hold that *Morning Call* applies here and, therefore, we hold that the trial court did not err in concluding that concerns over the invasion of privacy do not outweigh the purpose of the Act.

B. *Wiretapping and Electronics Surveillance Control Act*

█ The County contends that the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701–5781 (WESCA), prohibits examination and inspection of the records requested by Newspapers. WESCA prohibits the unauthorized use of "pen registers." A pen register is defined as a "device which records or decodes electronic or other impulses which identify the numbers dialed or otherwise transmitted, with respect to wire communications, on the telephone line to which the device is attached." Section 8 of WESCA, 18 Pa.C.S. § 5771, prohibits the installation of a pen register by anyone other than a law enforcement officer who has prior court approval for such installation. While the County does not contend that Newspapers intend to install a pen register, the County does assert that access to the County's itemizations has the same effect as the installation of a pen register.

Newspapers counter, asserting that the County's references to WESCA and the expectations of privacy in telephone conversations are irrelevant here because cellular phones op-

erate on open air waves which can admittedly be scanned by anyone who so chooses. Thus, Newspapers assert that the itemizations cannot be *private facts*, a prerequisite for a cause of action for an invasion of privacy. *Harris v. Easton Publishing Co.*, 335 Pa.Superior Ct. 141, 483 A.2d 1377 (1984). While this argument is somewhat persuasive, we feel obliged to go beyond this factual assertion and consider the legal implications of *Nagy v. Bell Telephone Co. of Pennsylvania*, 292 Pa.Superior Ct. 24, 436 A.2d 701 (1981) and *Barasch v. Pennsylvania Public Utility Commission*, 133 Pa.Commonwealth Ct. 285, 576 A.2d 79 (1990), *aff'd*, 529 Pa. 523, 605 A.2d 1198 (1992), upon which the County relies.

In *Nagy*, Bell Telephone released long distance telephone records to a third party, after the subscribers, the plaintiffs, specifically requested Bell Telephone not to release such records. The plaintiffs filed a breach of contract action claiming Bell Telephone had impliedly breached its contract with them by releasing numbers without their consent *and* a tort action for an impermissible invasion of privacy. The trial court sustained Bell Telephone's preliminary objections, holding that the plaintiffs had failed to state a cause of action.

On appeal, the Superior Court overruled the trial court in part, holding that the plaintiffs had stated a cause of action for a breach of contract. However, the Superior Court sustained the trial court's decision on the tort action, holding that the release of telephone numbers called by the plaintiffs did not constitute an invasion of privacy. The *Nagy* court found that the conduct did not constitute an invasion of privacy, because the conduct failed to meet the definition set forth in Restatement, Second of Torts § 652D (tent. Draft No. 13, 1967) and as adopted by the Supreme Court in *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133 (1974), which provides:

> One who gives publicity to matters concerning the private life of another, of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy.

*Id.* at 130, 327 A.2d at 136 (citation omitted). Holding that the crux of the tort developed by the plaintiffs in *Nagy* is publici-

ty, the Superior Court held that notification of two or four third parties is not sufficient to constitute "publication," without which there is no actionable invasion of privacy. Thus, the County asserts that the release to Newspapers, which have wide circulation would certainly meet the definition of "publication" envisioned by the *Nagy* court. However, we note that *Nagy* also held in order to establish an action for invasion of privacy the "highly offensive or objectional act ... must be committed in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Nagy*, 292 Pa.Superior Ct. at 30, 436 A.2d at 704–705 (citations omitted). The County contends that the situation, here, i.e., the release of numbers to Newspapers which have a huge volume of readers, creates the requisite "highly offensive or objectionable" act. However, the trial court did not find that the County demonstrated that the release of the itemizations would "outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Considering the entire application of *Nagy*, we hold that the County failed to prove examination and inspection of the itemization would be tantamount to a "highly offensive act," as contemplated in *Nagy*.

Next, the County cites *Barasch* in support of its position that WESCA establishes a privacy right in one's telephone number. In *Barasch*, the Public Utility Commission (PUC) conducted a hearing addressing Bell Telephone's application to provide several new services to its subscribers including "Caller*ID." "Caller*ID" allows a subscriber to identify and record the number of the incoming call. The PUC allowed the use but Judge Smith, writing for the majority of this Court, held that "Caller*ID" violated the privacy rights of Pennsylvania citizens guaranteed by the Pennsylvania Constitution. Judge Pellegrini concurred in part and dissented in part, joined by Judge McGinley, holding that "Caller*ID" violated only WESCA and that the constitutional question should not have been reached. The Supreme Court specifically upheld Judge Pellegrini's concurring opinion and did not need to reach the constitutional claims.

The County asserts that the case at hand is, however, more compelling than *Barasch*, in that the recipients of phone calls made from County cellular phones have no knowledge at all that the caller is using such a cellular phone which records the numbers called and thus, the invasion of privacy is greater. In making this argument the County assumes that a right to privacy in one's telephone number inures to the benefit of the individual who has been contacted by a public official on a public line, funded through public taxes. *Barasch* does not encompass constitutional claims to the right of privacy in one's phone number but merely holds that the "Caller*ID" option is an impermissible "pen register" under WESCA. Because the itemizations are not "pen registers" under WESCA, we are not persuaded to expand the holding of *Barasch*. Therefore, the trial court's holding that examination and inspection of the itemizations is not contrary to statute law, order or decree is affirmed.

## III. PERSONAL REPUTATION OR SECURITY EXCEPTION

Before the trial court, the County contended that the release of the itemizations would damage personal reputation or impair the security of persons who spoke with County officials on Cellular One telephones. Refusing to equate "personal security" with "privacy," the trial court found that the itemizations did not have an "impermissible taint" on the face of the itemizations that would damage personal reputation or impair the security of persons who spoke with public officials on the cellular phones. (Trial court opinion at 13).

In *Moak v. Philadelphia Newspapers, Inc.*, 18 Pa.Commonwealth Ct. 599, 336 A.2d 920 (1975), after the Pennsylvania Crime Commission issued a report alleging widespread corruption in the Philadelphia Police Department, Philadelphia Newspapers demanded access to the payroll records. We affirmed the trial court's grant of access, holding:

[T]hat it is our duty under the Act to determine only whether the public records themselves would operate to the prejudice or impairment of reputation, not whether their

use with other information might have such harmful consequence. Since the payroll records here sought are incapable of such harm they are not excepted from disclosure. *Id.* at 605, 336 A.2d at 924.

In *Young v. Armstrong School District,* 21 Pa.Commonwealth Ct. 203, 344 A.2d 738 (1975), an individual requested access to a list of kindergarten pupils in order to contact the parents regarding controversial schedule changes. The school district refused, claiming that access might prejudice or impair the personal security of students or their parents, if the records fell into the hands of unscrupulous solicitors. In ordering the school district to turn over the documents we held:

[F]or us to equate a concept of privacy with the concept of 'personal security' would usurp the legislative prerogative of the General Assembly. We must assume that the legislature would have used clear and appropriate language had it intended such a result. The concept of personal security, we believe, involves protection from personal harm rather than protection from an invasion of privacy. To hold otherwise would render the Act nugatory. Moreover, we have held that for records to fall within the personal security exception they must be intrinsically harmful and not merely capable of being used for harmful purposes.

*Id.* at 207, 344 A.2d at 740.

Because we hold that the District Attorney, Drug Task Force, Sheriff and Coroner have been able to redact telephone numbers concerning "investigations," we agree with the trial court that any risk to personal security or reputation has been removed. The telephone numbers remaining do not in and of themselves trigger any risk of harm to individual security or reputation. Therefore, we affirm that portion of the trial court's holding that the requested itemizations do not fall under the personal security/reputation exception.

## CONCLUSION

The documents requested in this case are like two sides of a coin; one side of the coin concerns the public's right-to-know

how their public tax dollars are expended, the other side of the coin concerns the privacy of the persons called or calling on publicly-owned Cellular One telephones. These interests must be balanced. The County has failed to show that the numbers on the Cellular One itemizations, other than those concerning investigations, were such as to trigger any privacy interest or would impair personal security or reputation. Accordingly, the order of the trial court is affirmed, as modified, in accordance with the foregoing opinion.

## *ORDER*

AND NOW, this 24th day of February, 1994, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby affirmed, as modified, in accordance with the foregoing opinion.

KELLEY, Judge, dissenting.

I respectfully dissent.

### I. Account or Voucher

This court has expressed clearly the meaning of "account", what it means and what it does not mean.

> We are convinced that when the Legislature used the word "account" in the definition of a public record it intended that word to have the meaning of a record of debit and credit entries to cover transactions during a fiscal period of time and did not intend the word "account" to mean a statement of facts or events.

*Butera v. Commonwealth,* 29 Pa.Commonwealth 343, 346, 370 A.2d 1248, 1249 (1977).

It follows that a voucher would also exclude statements of facts and events. The itemization of the facts or events of the caller pen billing are therefore excludable under this court's prior decision.

Clearly, the itemization sheets are records of facts and events of phone calls, numbers and time. Such is not within the legislative meaning of accounts or vouchers.

## II. Constitutional Privacy

The itemization sheets should not be available for public disclosure, as it would violate the constitutional guarantees of privacy under the Commonwealth's Constitution, art. I, § 8.

> Obviously, access to information about who is talking to whom, even without direct access to the contents of what they are saying, can be a powerful tool for either good or bad ends. In any case we do not hesitate to say that a caller and the person he calls expect and are entitled to as much privacy in the fact thay are talking to one another as in what they say to each other....

> The legislature of this Commonwealth has explicitly recognized that information accessed by the telephone company does not thereby enter the public domain, or the field of scrutiny open to the police.

*Commonwealth v. Beauford,* 327 Pa.Superior Ct. 253, 266, 475 A.2d 783, 789–90 (1984). The Court went on further:

> If any law enforcement officer could, with or without probable cause or even reasonable suspicion, use a pen register on his own authority to record every number dialed by any citizen in Pennsylvania from a residential, business, or government phone, the pen register clearly could become a powerful weapon threatening invasion not only of the individual's intimate privacy, but also his political liberty, including his rights to associate, to express his views, and even to think in freedom. ... have led us to the conclusion that an individual's expectation of privacy in the telephone numbers he calls is reasonable, legitimate, and therefore constitutionally protected against government surveillance and intrusion without probable cause.

*Beauford,* 327 Pa.Superior Ct. at 268–69, 475 A.2d at 791.

Clearly, therefore, the information from the itemization sheets are not available under the Right to Know Statute as disclosure would violate the Constitutional Right of Privacy of the caller and those called.

### III. Investigation

There is a third reason I would deny the disclosure of the itemization sheets. That is the specific statutory exemption as embracing investigation. The trial court and the majority opinion are too restrictive. The term "Investigation" is not modified in the Act by "criminal", or "ongoing", or "completed", as the trial court and the majority opinion imply.

Investigation is undertaken by all offices of our government. As applied to county government, judicial notice may be taken of the power and duties of all officers thereof. Each enumerated office in Washington County utilizing a cellular phone has investigative powers and duties. The District Attorney, the Sheriff, the Coroner, and Drug Task Force, admittedly by the majority have investigative powers.

I believe the County Commissioners exercising the hybrid function of legislative and executive have a duty to investigate concepts, ideas, in how and what to legislate and/or administer with the Health Center, EMS Services, and the Washington County government. Such investigation would and should vary among the three County Commissioners, communicating with their respective counsel, formally and informally, seeking input from a variety of citizens or other officials beyond the County of Washington. Such duty to investigate is no less than the General Assembly and Executives of the Commonwealth in pursuing their respective legislative and policy making decisions.

Additionally, the Commissioners have a complete responsibility of all County personnel by their permanent membership on the County Salary Board. Personal investigation must be confidential.

To disclose such supplemental information would thwart the free and complete investigation in discharging the responsibility by County Officials.

For any one of the above reasons, I would reverse the trial court and deny the inclusion of the supportive information.