**TAPCO, INC., Appellant,**

**v.**

**TOWNSHIP OF NEVILLE.**

Commonwealth Court of Pennsylvania.

Argued March 10, 1997.
Decided May 14, 1997.

Maureen E. Sweeney, Pittsburgh, for appellant.

Gregory Gleason, Pittsburgh, for appellee.

Before SMITH and PELLEGRINI, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Tapco, Inc. (Tapco) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) affirming in part and reversing in part the Township of Neville's (Township) denial of Tapco's request for a variety of information under Pennsylvania's Right-to-Know Act (Act).[1]

At the outset, we note that Tapco's requests read like discovery requests rather than Right-to-Know Act requests. Rather than requesting accounts or vouchers that it wants to examine, Tapco wants the Township to conduct a records search and produce certain documents. Under the Right-to-Know Act, all the agency is required to do is make the records available for inspection; it is up to the requester to conduct the search. If an objection had been made to the form of the request, it would have been proper for the trial court to have quashed the request. However, because there was no objection, we will consider this appeal.

Tapco is a Pennsylvania corporation and operates a rendering operation in the Township which involves cooking animal by-products. Pursuant to the Act, Tapco made a request for (1) audio tapes of the Township Board of Commissioners' meetings and (2) a video tape of the Tapco facility which was shown at a Board of Commissioners' meeting. The Township denied this request and Tapco filed an appeal with the trial court.

Tapco then made a second request to the Township seeking:

(1) A copy of an Agreement between the Township and Sebring and Associates and/or William Otto regarding the Township's retention of an environmental solicitor;

(2) All minutes of regular or caucus meetings, and any notes or other documents related to the Sebring and Associates/Otto proposal or agreement with the Township;

(3) A copy of any police reports or other written documents related to any Tapco odor complaint(s);

(4) Any tape recordings or video tapes relating to any Tapco odor complaints;

---

1. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.4

(5) Copies of all correspondence, notes, memoranda, records of telephone conversations, proposals, appraisals, condition reports, inspection reports or any related correspondence or photographs from March 1, 1993, through and including the present date from Kappe & Associates related to the Township's pump stations;

(6) All work schedules, work invoices, records of repair or maintenance work, bills/invoices for materials related to the repair, retrofit, refurbishing and/or replacement work performed on the Township's pump stations from October 1, 1994, to the present date;

(a) Produce all documents identifying the conditions, causes, reasons or purposes for any of the repair, retrofit, refurbishing or replacement work to the Township's two pumping stations from October 1, 1994, to the present date;

(b) Produce all documents related to any proposed repairs, retrofit, refurbishing or replacement work for the Township's two pump stations scheduled or intended to be performed during March or April of 1996;

(7) All documents, correspondence or other tangible things between the Township and FEMA or PEMA from January 1, 1988, through the present date;

(8) Produce a copy of the 'proposed draft' of the Zoning Permit for Tapco as more fully described at page 333 of the Commissioners' Meeting Minutes dated May 14, 1986.

(Reproduced Record at pp. 18a–19a). The Township also denied this request and Tapco amended its appeal in the trial court to include this denial.

Not deterred, Tapco then made a third request that stated:

1. Produce all documents, drafts, or other tangible things that relate to, refer to, or address the enactment of the following Zoning Ordinances of the Township of Neville:

a. Article 3, Regulation 3–314 (Performance Standards) and/or 3–314.4 (Odors) as set forth in verbatim below:

. . .

2. All documents or other tangible things which relate to, refer to, or address the interpretation of the Zoning Ordinances 3–314 and/or 3–314.4.

3. All documents or other tangible things which relate to, refer to, or address the enforcement of Zoning Ordinances 3–314 and/or 3–314.4.

4. All documents which refer to, relate to, or address citations, violations, penalties, warnings, or notices related to Zoning Ordinances 3–314 and/or 3–314.4.

5. Produce all documents, meeting minutes, memoranda, notes, or other tangible things wherein Zoning Ordinances 3–314 and/or 3–314.4 are addressed, mentioned, discussed, considered or otherwise referenced.

(Reproduced Record at pp. 67a–68a). Like the other requests, the Township denied this request, and, like the other denials, Tapco again amended its appeal to the trial court to include this request.

■ Upon consideration of these consolidated appeals, the trial court, for the most part, upheld the Township's denial of the requests. It did, however, order the Township to make available the invoices related to the repair of the pumping stations and any citations issued pursuant to its zoning ordinances. Tapco then brought this appeal, contending that it is entitled to those documents that it did not receive because they are public records under the Right-to-Know Act.[2]

Section 1 of the Act, 65 P.S. § 66.1, defines public record in relevant part as follows:

Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency

---

2. Our scope of review under the Right-to-Know Act is limited to determining whether the agency's denial of the request for the desired information was for just and proper cause. *Morning Call, Inc. v. Lower Saucon Township,* 156 Pa. Cmwlth. 397, 627 A.2d 297 (1993).

fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its duties....

In *Nittany Printing v. Centre County,* 156 Pa.Cmwlth. 404, 627 A.2d 301, 303 (1993), this court explained the requester's burden of establishing that a document is a public record under the Act, stating:

> To establish that a document is a public record because it constitutes a 'minute, order or decision' the person seeking the information must establish that the requested material:
>
> > (1) is generated by an 'agency' covered by the Act;
> >
> > (2) is a minute, order or decision of an agency or an essential component in the agency arriving at its decision;
> >
> > (3) fixes the personal or property rights or duties of any person or group of persons; and
> >
> > (4) is not protected by statute, order or decree of court. (Footnotes omitted).

For Tapco to be entitled to any of the requested documents, its request must meet this criteria.

**3.** Pennsylvania's rules of statutory construction provide for undefined words to be given their common and ordinary usage as 1 Pa.C.S. § 1903(a) provides in relevant part that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage."

**4.** Section 6 of the Sunshine Act, July 3, 1986, P.L. 388, 65 P.S. § 276, provides:
Written minutes shall be kept of open meetings of agencies. The minutes shall include:
(1) The date, time and place of the meeting.
(2) The names of members present.
(3) The substance of all official actions and a record by individual members of the roll call votes taken.
(4) The names of all citizens who appeared officially and the subject of their testimony.

**5.** Tapco also seeks disclosure of a video tape shown by the Township at a Commissioners' meeting. This video tape was made by OSHA

## I.

▮▮▮ Tapco argues that because audio tapes that were used by the Township secretary to produce the written minutes of the Commissioners' meetings are minutes themselves, they are subject to disclosure under the Act. The term "minute" is not defined by the Act, but Webster's defines "minute" as "the official record of the proceedings of a meeting." [3] Webster's Ninth New Collegiate Dictionary, 756, 1989. In turn, Section 6 of the Sunshine Act [4] provides that written minutes be kept of all open meetings of agencies which include the substance of all official actions taken. The "official record" of the Township's actions then, the one that fixes the rights of persons, is the written minute, not a tape recording of the meeting.[5] Because any right was fixed by the written minutes, not the audio tape, the audio tape is not a public record within the meaning of the Act.[6]

## II.

▮▮▮ Before the trial court Tapco sought a contract/proposal with or from Sebring and Associates to act as the Township's environmental solicitor. The trial court found there was no signed contract between the Township and Sebring and Associates and because there was no signed contract Tapco was not entitled to the proposal. We agree. If that proposal had been formalized into a contract,

and obtained by the Township through the federal Freedom of Information Act. However, because there is no evidence that this video tape played any role in fixing the rights of any person, it is not a public record subject to disclosure under the Act. Accordingly, the trial court did not err in holding that it was not subject to disclosure.

**6.** *Accord, Atlantic City Convention Center v. South Jersey Publishing Company, Inc.,* 135 N.J. 53, 637 A.2d 1261 (1994), holding that under New Jersey's Right-to-Know Act (which defines public records as those that are required by law to be made, maintained or kept on file), source audio tapes made in the course of a public meeting for the purpose of assisting in the preparation of the official minutes are not subject to disclosure under New Jersey's Right-to-Know Act.

that proposal as well as competing proposals would be subject to disclosure. However, while a contract must be disclosed unless it falls under another exception in the Act, *Morning Call v. Lower Saucon Township*, 156 Pa.Cmwlth. 397, 627 A.2d 297 (1993), a proposal itself is not a public record under the Act because it does not lead to the expenditure of public funds and need not be disclosed.[7]

### III.

■ As to Tapco's request for police reports, written documents, tape recordings or video tapes relating to odor complaints against Tapco, it contends that these documents are public records because they "likely" form the basis of any action the Township may have taken against Tapco. While the police incident reports are subject to disclosure under the Act, *see Commonwealth v. Mines*, 680 A.2d 1227 (Pa.Cmwlth.1996), *petition for allowance of appeal denied*, 547 Pa. 738, 690 A.2d 238 (1997), *petition for cert. filed*, (March 3, 1997) (holding police blotter reports are equivalent to incident reports and subject to disclosure under the Act), we have previously held that information related to police investigations are excluded from the Act's definition of public record. *Sullivan v. City of Pittsburgh, Department of Public Safety*, 127 Pa.Cmwlth. 339, 561 A.2d 863 (1989), *petition for allowance of appeal denied*, 525 Pa. 591, 575 A.2d 120 (1990). While Tapco is entitled to the police incident reports, the other documents related to odor complaints are not "public records" and, accordingly, the Township properly refused to disclose them.

### IV.

■ The wide variety of documents requested by Tapco such as work schedules and work orders are not public records because the documents do not involve the appropriation of public funds. A similar request was made in *Butera v. Commonwealth of Pennsylvania, Office of Budget*, 29 Pa. Cmwlth. 343, 370 A.2d 1248 (1977), where a citizen sought disclosure of a wide variety of budget information, including documents giving the facts and explaining the reasons for various budget estimates. This court held that the documents sought were statements of facts and events which are not subject to disclosure under the Act. Here, the documents sought, such as the work schedules and documents detailing the reasons for the repairs, as well as any proposed repairs, are documents recording facts and events and, as in *Butera*, they are not subject to disclosure under the Act.[8]

### V.

■ As to the "proposed draft" of a zoning permit for Tapco, Tapco asserts that this document is subject to disclosure as a minute because it was mentioned in the minutes of a Commissioners' meeting, and the proposed draft was prepared with the intention of affecting its rights. Tapco cites no authority, nor do we know of any, which holds that the mention of a document in the minutes of a meeting transforms that document into a minute. Moreover, the document sought here was a "proposed draft" and, as such, it does not affect the personal or property rights of any individual and is not a public record.

---

7. Tapco also requests disclosure of all minutes of regular or caucus meetings and any notes or other documents related to the Sebring and Associates/Otto proposal or agreement with the Township, while the Township asserts that none of these documents exist. As we have held above, Tapco is entitled to the written meeting minutes and the contract between Tapco and Sebring, if it exists. Tapco also would be entitled to any documents referenced in the contract. *See Envirotest Partners v. Commonwealth, Department of Transportation*, 664 A.2d 208 (Pa. Cmwlth.1995). As to the documents related to a proposal, because a proposal cannot fix personal

or property rights or duties of any person, any notes related to it also would not fix personal or property rights, and consequently, they are not subject to disclosure.

8. Tapco also seeks all correspondence "or other tangible things" between the Township and FEMA or PEMA since 1988. Tapco offers no explanation in its request or brief as to why these documents are public documents under the Act. Consequently, Tapco has not met its burden of establishing that these documents are subject to disclosure under the Act.

## VI.

■ Finally, Tapco seeks any document which in any way references the Township's odor control ordinance, including any proposed drafts of the Township's odor control ordinance and performance standards ordinance. Tapco argues that because the trial court concluded that citations issued under the odor control ordinance are public records, then all other documents which mention the odor control ordinance are public documents. Once again, Tapco cites no specific authority for this proposition but simply asserts that the ordinance should be broadly construed. While the Act enumerates certain classes of documents as public records, not among the documents specified in the Act are "all documents and tangible things." Quite simply, Tapco has failed to establish in this vague request that these items are public records and, accordingly, the Township did not err in refusing to disclose these items.

Accordingly, we affirm the trial court's order except as to its holding that police incident reports are not public records.

### ORDER

AND NOW, this 14th day of May, 1997, the order of the Court of Common Pleas of Allegheny County at No. SA–96–325 dated July 24, 1996, is affirmed in part and reversed to the extent that it did not require the disclosure of police incident reports, and we further direct that the police incident reports sought by Tapco be disclosed. In all other respects, the order of the Court of Common Pleas of Allegheny County is affirmed.

SMITH, Judge, concurring.

Although I agree with most of the majority's analysis and conclusions, I write separately to express my view concerning the analysis of contract proposals. The definition of "public record" in Section 1(2) of the Act creates two overall categories of information, one dealing with "accounts, vouchers and contracts" relating to receipt or disbursement of funds and the other relating to any "minute, order or decision ... fixing personal or property rights...." A contract proposal is logically related to the resulting contract, in the first category.

In regard to agency "decisions," the Court has long held that the term encompasses more than a literal document; it includes materials that form the basis for the decision or that are an essential component of it. *See, e.g., Patients of Philadelphia State Hospital v. Department of Public Welfare,* 53 Pa. Cmwlth. 126, 417 A.2d 805 (1980) (report of accrediting body whose approval was required for decision as to continued state funding); *Young v. Armstrong School Dist.,* 21 Pa.Cmwlth. 203, 344 A.2d 738 (1975) (names and addresses of students, which formed basis for decisions as to their school assignments).

Cases recognizing the importance of contract proposals include *Vartan v. Department of General Services,* 121 Pa.Cmwlth. 470, 550 A.2d 1375 (1988), where the successful bidder ultimately provided contract proposal materials voluntarily, although it resisted as to many other items requested, and *Envirotest Partners v. Department of Transportation,* 664 A.2d 208 (Pa.Cmwlth.1995), where the request for proposals and the proposal were incorporated into the contract for dispute resolution purposes. In *City of Chester v. Getek,* 132 Pa.Cmwlth. 394, 572 A.2d 1319 (1990), appraisals of properties that the city was purchasing for a development project were held to be subject to access as essential components of those decisions. The information contained in the appraisals provided the basis for appraisal amounts in council resolutions. Because the ultimate transactions were purchases pursuant to contracts, however, the holding in effect recognized the appraisals as public records that formed the basis for and were essential components of contracts.

A contract proposal will ordinarily contain factual representations that are used to determine the contents of the final contract. It could conceivably contain questionable inducements or other material essential to an understanding of the contract. The approach of including items that are essential components of agency decisions within the definition of "public records" has proved to

be beneficial and in keeping with the spirit of the Act. I believe that this approach applies to contracts as well and is the proper basis for recognizing a contract proposal as a public record, where a contract exists.