Lebanon News Publishing Company, d/b/a Lebanon Daily News, Appellant *v.* The City of Lebanon et al., Appellees.

338

Argued September 15, 1982, before Judges Rogers, Williams, Jr. and MacPhail, sitting as a panel of three.

*Robert W. Feeman,* with him *Loren A. Schrum, Egli, Reilly, Wolfson and Feeman,* for appellant.

*Samuel G. Weiss, Jr., Weiss, Weiss & Weiss,* for appellees.

Opinion by Judge MacPhail, October 13, 1982:

Lebanon News Publishing Co., d/b/a Lebanon Daily News (Appellant) has appealed from an order

of the Court of Common Pleas of Lebanon County which sustained a demurrer to its complaint in equity, as amended, and ordered the action dismissed.

Appellant filed a complaint in equity with the trial court on November 26, 1980 alleging, *inter alia,* that Appellees[1] had denied Appellant direct access to previously available "police blotters", "police logs", "radio room logs" or other original records of entry compiled chronologically and maintained by the Lebanon Police Department (Department). The complaint further alleges that the denial of access, which also occurred on November 26, 1980, was pursuant to an order of the Chief of Police which provided that such information would henceforth be made available to the public through news releases prepared by the Department. Appellant sought damages and injunctive relief pursuant to Section 9183 of the Criminal History Record Information Act (CHRI Act), 18 Pa. C. S. §9183, to compel Appellees to provide direct access to the requested information.

In response to Appellees' preliminary objections to the complaint, Appellant filed an amended complaint to which additional preliminary objections, in the nature of a demurrer, were filed. The trial court sustained the demurrer on the ground that Appellant had failed to pursue its exclusive statutory remedy under Section 4 of the Act of June 21, 1957 (Right-to-Know Act), P.L. 390, *as amended,* 65 P.S. §66.4. Appellant perfected its appeal to this Court following the dismissal of its equity action.

Two issues have been presented for our consideration: whether or not the CHRI Act requires that police blotters be made available to the public, and, if

---

[1] The City of Lebanon; Donald Griffith, Mayor; Martin Schneider, Councilman; Betty Schultz, Councilwoman; Betty Eiceman, Councilwoman; Thomas Edkin, Councilman; and George Gruber, Chief of Police.

so, whether the CHRI Act provides a remedy where access to such information is denied. The trial court states in its opinion that Appellant "abandons its quest for access to all records referred to in its complaint save police blotters." *Lebanon News Publishing Co. v. City of Lebanon,* (No. 43 Civil Action—Equity 1980, filed June 17, 1981), slip op. at 6. We will similarly limit the issues on appeal to the availability of access to police blotters.

Since this opinion focuses on public access to police blotters, we think it would be helpful to define the pertinent term. Although not specifically defined by the CHRI Act, Section 9104(a) of the Act, 18 Pa. C. S. §9104(a), provides that, with certain exceptions, the Act does *not* apply to "original records of entry compiled chronologically" *including* "police blotters." We can infer, therefore, that a police blotter is a type of chronological compilation of original records of entry. The term has also been defined as "a book in which entries (as of transactions or occurrences) are made temporarily pending their transfer to permanent record books (a police). . . ." Webster's Third New International Dictionary 238 (1966).

Turning to the first issue presented, Section 9104 of the CHRI Act, 18 Pa. C. S. §9104, provides the following with regard to police blotters:

(a) *General rule.*—Except for the provisions of Subchapter B (relating to completeness and accuracy), Subchapter D (relating to security) and Subchapter F (relating to individual right of access and review), *nothing in this chapter shall be construed to apply to:*

(1) Original records of entry compiled chronologically, including, but not limited to, *police blotters.*

. . . .

(b) *Court dockets and police blotters.* — Court dockets and police blotters and information contained therein shall, for the purpose of this chapter, be considered public records. (Emphasis added.)

Thus, we learn that only Subchapters B, D and F of the CHRI Act apply to police blotters and that police blotters are deemed to be "public records" by the Act. It is Subchapter C of the CHRI Act, 18 Pa. C. S. §§9121-25, however, which applies to the dissemination of information under the Act. Since Subchapter C does *not* apply to police blotters, we must conclude that their dissemination is not required by the CHRI Act. This conclusion is buttressed by the fact that Subchapter C addresses only public access to "criminal history record information", which term is defined so as to specifically *exclude* records such as police blotters. *See* Section 9102 of the CHRI Act, 18 Pa. C. S. §9102.

In view of our conclusion that the CHRI Act does not require that police blotters be disseminated to the public, we also rule that the Act does not provide sanctions or damages where access to such information is denied. This does not mean, however, that the public is not entitled to access to police blotters.

Although the CHRI Act does not itself require that police blotters be made available to the public, it does provide that such information be considered "public records." Thus, we think access to police blotters is controlled by the Right-to-Know Act. While police blotters are not specifically included in the definition of public records found in Section 1 of the Right-to-Know Act, 65 P.S. §66.1, we have previously stated our belief that:

[T]he legislature intended the generic definition of a public record contained within the

Right-To-Know Act to incorporate by implication those specific definitions of "public record" contained in statutes allowing for public access to particular documents of particular agencies.

*Marvel v. Dalrymple*, 38 Pa. Commonwealth Ct. 67, 75, 393 A.2d 494, 498 (1978). We think that the definition of public record in the Right-to-Know Act has clearly been expanded to include police blotters. We, accordingly, agree with the trial court that Appellant's remedy in the instant case was to seek access to the Department's police blotter through the appeal procedure provided by Section 4 of the Right-to-Know Act, 65 P.S. §66.4. We think the trial court erred, however, in concluding that as a result of Appellant's failure to pursue its proper statutory remedy the action must be dismissed.

Section 708(c) of the Judicial Code,[2] 42 Pa. C. S. §708(c), provides, in pertinent part, as follows:

> If a complaint in the nature of equity . . . is commenced in any court against a government unit . . . objecting to a governmental determination . . . where the proper mode of relief is an appeal from the determination of the government unit, *this alone shall not be a ground for dismissal,* but the papers whereon the process against the government unit . . . was commenced shall be regarded and acted on as an appeal from such determination of the government unit and as if filed at the time such process was commenced. (Emphasis added.)

Applying this provision to the instant case, we note that Appellant's complaint is in the nature of equity

---

[2] *See also* Section 701(a) of the Judicial Code, 42 Pa. C. S. §701(a).

and objects to the determination of a government unit.[3] Moreover, the trial court correctly established that the proper mode of relief would have been an appeal from the Department's denial of access to the police blotter.[4] In view of the mandatory wording of Section 708(c), we think the court was required to regard the equity complaint as if it was an appeal under the Right-to-Know Act.[5] We, accordingly, reverse the trial court's order dismissing the Appellant's action

---

[3] "Government unit" is defined by Section 102 of the Judicial Code, 42 Pa. C. S. §102, so as to include "government agencies" which term, in turn, is defined as, "Any Commonwealth agency or any political subdivision or municipal or other local authority, or any officer or agency of any such political subdivision or local authority."

[4] Thus, we believe Section 708(c) would *not* apply where all administrative remedies had not been exhausted; rather, it would apply only where the proceedings had reached the stage where an appeal to a court would be appropriate.

[5] Section 708(c), in our opinion, is analogous to Pa. R.C.P. No. 1509(c) which provides that:

> The objection of the existence of a full, complete and adequate non-statutory remedy at law shall be raised by preliminary objection. If the objection is sustained, *the court shall certify the action to the law side of the court.* If not so pleaded, the objection is waived. (Emphasis added.)

With regard to the certification requirement of Rule 1509(c), it has been stated that, "If the objection is raised by the defendant, and is sustained as valid, the court is given no option. The certification to the law side is mandatory." 5 Goodrich-Amram 2d §1509(c):2 (1977). *See also McGovern v. Spear*, 463 Pa. 269, 344 A.2d 826 (1975) and *Trimble Services, Inc. v. Franchise Realty Interstate Corp.*, 445 Pa. 333, 285 A.2d 113 (1971). We, similarly, think that Section 708(c) of the Judicial Code places a mandatory duty on a court to regard original process papers as constituting an appeal where the court concludes that the proper mode of relief in a particular case is an appeal to a court from the determination of the government unit involved.

and remand for further proceedings consistent with this opinion.[6]

## Order

It is ordered that the order of the Court of Common Pleas of Lebanon County, dated June 17, 1981, is hereby reversed and remanded for further proceedings consistent with the foregoing opinion.

---

[6] We were informed at oral argument that Appellant has, in fact, filed an appeal under the Right-to-Know Act. Since this information is not of record, we will nevertheless remand the instant case for whatever additional proceedings may be required.