PENNSYLVANIA STATE
POLICE, Petitioner

v.

OFFICE OF OPEN RECORDS,
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 23, 2010.
Decided Sept. 16, 2010.

R.H. Hawn, Jr., Asst. Counsel, Harrisburg, for petitioner.

Nathanael J. Byerly, Chief Counsel, Harrisburg, for respondent.

Linda J. Laub, Deputy Chief Counsel, Harrisburg, for amicus curiae, The Office of Victim Advocate, in support of Pennsylvania State Police.

Melissa Melewsky, Harrisburg, for amicus curiae, The Pennsylvania Newspaper Association, in support of Office of Open Records.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

The Pennsylvania State Police (PSP) petitions this Court for review of the Final Determination by the Office of Open Records (OOR) to grant the appeal of Donald R. Gilliland (Requester) from the PSP's denial of his request for an incident report (Incident Report) under the Right–to–Know Law (RTKL).[1] PSP argues that the OOR erred in granting the appeal because the Incident Report is a criminal investigation record exempted from disclosure under the RTKL.

On February 2, 2009, Requester, the managing editor of the Potter Leader–Enterprise newspaper, submitted a Right–To–Know Law Request (Request) seeking:

a *complete* incident report—listing names of victims *AND* names of people being charged—for incident # F02–1003340 occurring on 28 Dec. 08. I'd list a name for reference if I could, but obviously I can't . . . which is a problem when trying to follow-up [sic] at the local magistrate judge's office as well. Copy of incomplete incident report is attached.

(Request, R.R. at 1a (emphasis and ellipsis in original).) Attached to the Request was

a PSP Public Information Release Report (PIRR) for Incident Number F02–1003340, which listed the location of the incident as, "[p]rivate residence along North Hollow Road, Sweden Twp., Potter County," listed the date and time of the incident as "12/28/08 / Approx. 1730 hours," and described the incident as follows:

On said date and time Victim # 1 and Victim # 2 were engaged in a verbal argument in the driveway area of a private residence. Actor # 1 proceeded to push Victim # 1. Actor # 2 proceeded to get into the vehicle of Victim # 2 as he was trying to leave. Actor # 2 proceeded to strike Victim # 2 with a fist as he was inside the vehicle. Actor # 1 proceeded to spin "doughnuts" in the drive way [sic] as Actor # 2 threw recently purchased meat products out the vehicle into the driveway and yard area in a circular pattern.

(PIRR, December 30, 2008, R.R. at 2a.)[2] On February 3, 2009, the PSP's Agency Open Records Officer (AORO) denied the Request on the basis that the requested Incident Report was a criminal investigative record exempt under Section 708(b)(16) of the RTKL, 65 P.S. § 67.708(b)(16). On February 11, 2009, Requester appealed the AORO's decision to the OOR. The OOR assigned the case to an appeals officer. The appeals officer sent a letter to the PSP stating that, because an incident report is equivalent to a police blotter, and police blotters are excluded from the criminal investigative records exemption at Section 708(b)(16), the Incident Report was a public record. The appeals officer invited the PSP to provide

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. It appears that Victim # 1 and Actor # 2 are the same person, as the PIRR described both as "[k]nown W/N/F–35 YOA." (PIRR,

R.R. at 2a.) Similarly, Victim # 2 and Actor # 1 appear to be the same person, described as "[k]nown W/N/M–40 YOA." (PIRR, R.R. at 2a.) The PSP acknowledges as much in its brief. (PSP Br. at 5.)

him with any evidence that the PSP might have that the release of the names of the victims/actors involved in the incident would "result in substantial and demonstrable risk of physical harm to or personal security of the victim[s]." (Letter from appeals officer to PSP AORO (March 16, 2009), R.R. at 10a.) The PSP responded via letter, disputing that incident reports are the equivalent of police blotters. The PSP did not provide evidence as to how the disclosure of the victims' names might result in a risk of harm to or impairment of the security of the victims on the grounds that the Incident Report, as a criminal investigative record, is not a public record as defined by the RTKL and, as such, the PSP was not required to produce additional reasons why information in the Incident Report should be withheld. Along with this letter, the PSP submitted a RTKL Liaison Verification stating that the PSP does not maintain a police blotter and that PSP incident reports are used for reporting investigative actions.

On March 23, 2009, the OOR issued its Final Determination granting Requester's appeal and directing the PSP to release an unredacted copy of the Incident Report to Requester. The OOR reasoned that, while Section 708(b)(16) exempts criminal investigative records from the definition of public records, Section 708(b)(16) specifically provides that the exemption does not apply to police blotter information and that, pursuant to *Commonwealth v. Mines,* 680 A.2d 1227 (Pa.Cmwlth.1996), and *Tapco, Inc. v. Township of Neville,* 695 A.2d 460 (Pa.Cmwlth.1997), incident reports are equivalent to police blotters. The OOR concluded that the Incident Report was, therefore, a public record and subject to disclosure, but that investigative information contained within the Incident Report could be redacted pursuant to Section 708(b)(16). The OOR concluded, however, that because the PSP bore the burden of showing that the victims' names were investigative information, or that release of the victims' names would cause a risk of physical harm to or the impairment of the physical safety of the victims, and failed to produce any evidence on these points, the PSP must release an unredacted copy of the Incident Report. The PSP now petitions this Court for review.[3]

In reviewing a final determination of the OOR, this Court "independently reviews the OOR's orders and may substitute its own findings of fact for that of the agency." *Bowling v. Office of Open Records,* 990 A.2d 813, 818 (Pa.Cmwlth.2010) (en banc). With regard to what evidence this Court may consider in reviewing a

---

3. In addition to briefs from the OOR and the PSP, this Court received *amicus curiae* briefs from: The Pennsylvania Newspaper Association; The Office of Victim Advocate; the Pennsylvania Attorney General and Pennsylvania District Attorneys Association; and The Pennsylvania Coalition Against Domestic Violence. This Court appreciates and has considered the arguments and perspectives provided by these *amici curiae.* In addition, we note that Requester sought to intervene in this appeal, *nunc pro tunc,* on the grounds that the OOR should not have been named as a respondent, pursuant to Rule 1513(a) of the Pennsylvania Rules of Appellate Procedure, which states that, "[i]n an appellate jurisdiction petition for review ... all real parties in interest, and not the governmental unit, shall be named as respondents" if the governmental unit is disinterested. Pa. R.A.P. 1513(a). By order dated September 2, 2009, this Court held that the OOR was not a disinterested party and denied Requester's request to intervene, but accepted Requester's brief as an *amicus* brief. *Pennsylvania State Police v. Office of Open Records* (Pa.Cmwlth. No. 741 C.D.2009, filed Sept. 2, 2009). This order was issued prior to this Court's decision in *East Stroudsburg University Foundation v. Office of Open Records,* 995 A.2d 496, 507 (Pa. Cmwlth.2010) (en banc), which held that the OOR does not have standing to participate as a party in petitions for review from its determinations.

decision of the OOR, this Court "is entitled to the broadest scope of review" but "should consider the manner of proceeding most consistent with justice, fairness and expeditious resolution." *Id.* at 820, 823. The RTKL does not prohibit this Court from considering evidence that was not before the OOR, including "an *in camera* review of the documents at issue." *Id.* at 820. After argument, this Court issued an order dated June 28, 2010, directing the PSP to supplement the record by submitting the Incident Report for in camera review by this Court.[4] *Pennsylvania State Police v. Office of Open Records* (Pa.Cmwlth. No. 741 C.D.2009, filed June 28, 2010).

■ Before this Court, PSP argues that the OOR erred in holding that the Incident Report was a public record because police incident reports are not equivalent to police blotters under the RTKL and the Criminal History Records Information Act (CHRIA).[5] The PSP asserts that the Incident Report is wholly exempt from disclosure because it is a criminal investigative record, which contains investigative materials and victim information. We agree.

We begin by examining the statutory language of the RTKL. Section 301(a) of the RTKL directs that "[a] Commonwealth agency shall provide public records in accordance with this act." 65 P.S. § 67.301(a). Section 305 of the RTKL provides, in pertinent part, that "[a] record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record," unless "the record is exempt under [S]ection 708." 65 P.S. § 67.305. Similarly, Section 102 of the RTKL defines a "public record," in part, as "[a] record ... of a Commonwealth or local agency that: (1) is not exempt under [S]ection 708." 65 P.S. § 67.102. Section 708(b)(16) states that records "exempt from access by a requester under" the RTKL include:

(16) A record of an agency relating to or resulting in a criminal investigation, including:

(i) Complaints of potential criminal conduct other than a private criminal complaint.

*(ii) Investigative materials, notes, correspondence, videos and reports.*

(iii) A record that includes the identity of a confidential source or the identity of a suspect who has not been charged with an offense to whom confidentiality has been promised.

(iv) A record that includes information made confidential by law or court order.

*(v) Victim information, including any information that would jeopardize the safety of the victim.*

(vi) A record that, if disclosed, would do any of the following:

(A) *Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.*

---

4. PSP argued in its brief, and before this Court at argument, that it could not disclose the Incident Report to the OOR because the OOR is not an agency to which information may be disclosed under Section 9106(c)(4) of the Criminal History Records Information Act, 18 Pa.C.S. § 9106(c)(4). Section 9106(c)(4) states:

(4) Investigative and treatment information shall not be disseminated to any department, agency or individual unless the de-

partment, agency or individual requesting the information is a *criminal justice agency* which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic.

18 Pa.C.S. § 9106(c)(4) (emphasis added).

5. 18 Pa.C.S. §§ 9101–9183.

(B) Deprive a person of the right to a fair trial or an impartial adjudication.

(C) Impair the ability to locate a defendant or codefendant.

(D) Hinder an agency's ability to secure an arrest, prosecution or conviction.

(E) Endanger the life or physical safety of an individual.

*This paragraph shall not apply to information contained in a police blotter as defined in 18 Pa.C.S. § 9102* (relating to definitions) *and utilized or maintained by the Pennsylvania State Police, local, campus, transit or port authority police department or other law enforcement agency or in a traffic report except as provided under 75 Pa.C.S. § 3754(b)(relating to accident prevention investigations).*

65 P.S. § 67.708(b)(16) (emphasis added).

This Court recently interpreted Section 708(b)(16) in *Mitchell v. Office of Open Records,* 997 A.2d 1262 (Pa.Cmwlth.2010). In *Mitchell,* the requester (Mitchell), an inmate, filed a RTKL "request with the PSP seeking copies of any documents showing the time the officers arrived and departed from Mitchell's residence ... in serving a search warrant." *Id.* at 1263. The PSP responded that it had found only one record relating to this request, and that this record was exempt from disclosure pursuant to Section 708(b)(16) of the RTKL and Section 9106(c)(4) of the CHRIA. *Mitchell,* 997 A.2d at 1263. Mitchell appealed to the OOR. In the course of the appeals process, the PSP described the document relevant to Mitchell's request as "a single-page Automated Incident Memo System (AIMS) query response," and explained that: (1) the AIMS record "manifestly pertain[ed] to a criminal investigation" and was therefore exempt under Section 708(b)(16)(ii); (2) the

content of the AIMS record would "obviously reveal the institution, progress or result of a criminal investigation" and was therefore exempt from disclosure under Section 708(b)(16)(vi)(A); and (3) that the AIMS record constituted investigative information exempt from disclosure under the CHRIA because it was assembled as a result of an inquiry into a criminal incident. *Id.* at 1263–64. The OOR determined that the AIMS record was exempt under Section 708(b)(16)(vi)(A) and denied Mitchell's appeal. *Id.* at 1264. Before this Court, Mitchell argued that the AIMS record was not exempt from disclosure under the RTKL or the CHRIA. This Court determined that the OOR properly relied on the affidavits submitted by the PSP in determining that the AIMS record was exempt from disclosure under Section 708(b)(16). *Id.* at 1265. Similar to this case, Mitchell also argued that the AIMS record was, in fact, an incident report equivalent to a police blotter and, therefore, a public record under the CHRIA. *Id.* at 1265. This Court noted that the "CHRIA concerns the collection, maintenance, dissemination and receipt of criminal history record information," and that Section 9102 of the CHRIA excludes investigative information from the definition of criminal history record information. *Id.* (citing 18 Pa.C.S. § 9102). Referring to Section 9102, this Court stated that "[i]nvestigative information is defined as '[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information.'" *Id.* (quoting 18 Pa.C.S. § 9102). Applying this definition to the AIMS record, this Court determined that the AIMS record contained information assembled as part of a criminal investigation and, therefore, constituted investigative information and was

not a public record pursuant to the CHRIA.

After reviewing the Incident Report in camera, this Court is convinced that it constitutes a criminal investigative report and is, therefore, not a public record per Section 708(b)(16)(ii). The Incident Report, itself, contains notes of interviews with the alleged victims/perpetrators, as well as another witness. The form on which the Incident Report is written contains checkboxes regarding whether certain investigative tasks have been carried out or whether certain information was discovered.[6] All of these boxes were checked in the Incident Report, either "yes" or "no." The above information was assembled as a result of an investigation into a criminal incident or an allegation of criminal wrongdoing. Therefore, the Incident Report is a report of a criminal investigation and contains investigative information, per *Mitchell* and Section 9102. Because the Incident Report is a criminal investigative report, it falls within the exemption at Section 708(b)(16)(ii) and is not a public record; therefore, it is not subject to disclosure.

■ The PSP, along with the Pennsylvania Coalition Against Domestic Violence and the Office of Victim Advocate (OVA), also argues that the Incident Report is exempt from disclosure pursuant to Section 708(b)(16)(v) because it contains victim information. After reviewing the Incident Report in camera, this Court notes that the Incident Report contains the victims' names and addresses. Section 708(b)(16)(v) exempts "[v]ictim information, *including* any information that would jeopardize the safety of the victim." 65 P.S. § 67.708(b)(16)(v) (emphasis added). The OOR contends that "the exemption for 'victim' information under the RTKL at 65 P.S. § [67.]708(b)(16)(v) does not expressly include the victim's name. This provision simply states that 'victim information' includes 'any information that would jeopardize the safety of the victim.' " (OOR's Br. at 24 (quoting 65 P.S. § 67.708(b)(16)(v)).) However, we do not agree that the phrase "*including* any information that would jeopardize the safety of the victim," 65 P.S. § 67.708(b)(16)(v) (emphasis added), limits the meaning of the term "victim information"; rather, it expands the meaning of that term. As the OVA astutely states, the final phrase of this provision:

> does not mean that for any material to be considered victim information one must always show that the release of the information jeopardizes the safety of the victim. . . . Instead, it is referencing a type of information that while on its face may not appear to be victim information it could be deemed victim information if it jeopardizes the safety of the victim. . . .

(OVA's Br. at 14.) A victim's name is "victim information," *i.e.* information about the victim. Moreover, as the OVA points out, victims of crime do not *choose* to be victims of crime. (OVA's Br. at 15.) The unwanted disclosure of a victim's name may prove to be a second victimization,

---

**6.** A copy of the PSP's incident report form is attached to Requester's brief. This is the same form that comprises the first two pages of the Incident Report. As the form shows, the checkboxes include items such as: "can a suspect be named"; "evidence at scene to link offender"; "latent prints discovered"; "any witnesses located"; "unique unusual method of operation"; and "thought to be connected with known crime pattern." (PSP Incident Report form SP 7–0050 (4–2007), Requester's Br. Ex. D.) Whether these questions are answered yes or no, such answers would disclose information assembled as a result of an investigation into a criminal incident or an allegation of criminal wrongdoing, and modus operandi information.

whether due to retaliation, the fear of retaliation, stigma, embarrassment, or other reasons. We note that, under the RTKL, it is not required that victims be notified that their information is going to be disclosed in advance of that disclosure; thus, it could be difficult or impossible to know in advance whether such disclosure would jeopardize the victim's safety. It appears that the Legislature balanced the need for public disclosure of victim information against the harm of such disclosure to victims, and exempted this information. For these reasons, we agree that the victims' names and addresses in this case are victim information and, thus, exempt from the definition of a public record pursuant to Section 708(b)(16)(v).

The OOR argues that its decision was proper because the RTKL Liaison Verification submitted by the PSP contained only broad, conclusory language stating that the Incident Report was not a police blotter and contained investigative information. Therefore, the OOR contends that its decision should not be reversed. The RTKL Liaison Verification stated that:

1. The Pennsylvania State Police does not create, maintain, or disseminate a "police blotter," [as defined by 18 Pa. C.S. § 9102.]

2. In accordance with Department regulations, the Pennsylvania State Police utilizes one of several forms to record and retain confidential criminal investigation information, one of which is the Pennsylvania State Police Incident Report.

a. A Pennsylvania Sate [sic] Police Incident Report is created by the investigating officer and is used "to report **investigative actions** resulting from alleged criminal offenses or oth-

er police matters." Pennsylvania State Police Operations Manual, 7–2, Chapter 7 (emphasis added).

b. An Incident Report does not provide a chronological listing of arrests, and therefore, is not a "police blotter" under 18 Pa.C.S. § 9102.

(RTKL Liaison Verification For PSP/ RTKL Request No. 2009–0076, R.R. at 14a.) We need not determine whether the RTKL Liaison Verification alone would satisfy the PSP's burden of proof here as we have concluded that the Incident Report falls within the criminal investigative record exemption at Section 708(b)(16)(ii). As noted above, this Court enjoys the broadest scope of review when considering final determinations of the OOR and may substitute our findings of fact for those of the OOR. *Bowling,* 990 A.2d at 818, 820. In addition, we may supplement the record by "an *in camera* review of the documents at issue." *Id.* at 820. Here, our determination that the Incident Report falls within the exemption at Section 708(b)(16)(ii) is based on our in camera review of the Incident Report. Therefore, we reject the OOR's argument on this point.

Requester argues that the OOR correctly held that the Incident Report was a police blotter, pursuant to *Mines* and *Tapco,* and is therefore not covered by the exemption at Section 708(b)(16), which explicitly excludes from the exemption police blotters as defined by Section 9102 of the CHRIA. In *Mines,* which considered an inmate's request for a broad array of police investigative information under the former Right–to–Know Law (Prior Law),[7] this Court stated that "A 'police blotter' is simply a chronological compilation of original records of entry. In other words, they are the equivalent of incident reports."

---

**7.** Section 3102(2)(ii) of the RTKL repealed the former Right–to–Know Law, Act of June 21, 1957, P.L. 390, *as amended, formerly* 65 P.S. §§ 66.1–66.4. 65 P.S. § 67.3102(2)(ii).

*Mines,* 680 A.2d at 1229 (citation omitted) (citing *Lebanon News Publishing Co. v. City of Lebanon,* 69 Pa.Cmwlth. 337, 451 A.2d 266 (1982)). In *Tapco,* this Court characterized *Mines* as holding that "police blotter reports are equivalent to incident reports and subject to disclosure under the [Prior Law]" and, on that basis, held that municipal police incident reports were subject to disclosure under the Prior Law. *Tapco,* 695 A.2d at 464. We do not agree that these cases stand for the principle that any document entitled an "incident report" is the equivalent of a police blotter and, therefore, not subject to the criminal investigative record exemption at Section 708(b)(16)(ii).

In *Mines,* this Court was not actually considering an incident report, but merely stating that we generally believed an incident report to be "a chronological compilation of original records of entry." *Mines,* 680 A.2d at 1229. Moreover, *Tapco* did not disclose the nature of the municipal incident reports at issue in that case, nor did it disclose the kind of information contained in those incident reports. Therefore, we cannot say that those incident reports are the same as the PSP's Incident Report in this case. This Court cannot make determinations about whether a given document is a public record merely based on the name or title of the document; we must consider, instead, the content and nature of the document. To do otherwise would elevate form over substance. Section 9102 of the CHRIA defines a "police blotter" as *"[a] chronological listing of arrests,* usually documented contemporaneous with the incident, which may include, but is not limited to, the name and address of the individual charged and the alleged offenses." 18 Pa. C.S. § 9102 (emphasis added). Having examined the Incident Report in this case, we are convinced that the Incident Report is not a "chronological listing of arrests."

18 Pa.C.S. § 9102. Rather, it is a description of an investigation by the PSP into a complaint of criminal activity. In addition, we note that a PSP incident report may be generated even in the absence of an arrest: the blank incident report form includes checkboxes indicating that an incident may be disposed of as "cleared by arrest," "unfounded," or "exceptionally cleared." (PSP Incident Report form SP 7–0050 (4–2007), Requester's Br. Ex. D.)

■ As part of Requester's argument that the OOR properly determined that the Incident Report constitutes a police blotter pursuant to *Mines* and *Tapco,* Requester argues that the OOR was correct that "if the incident report contained investigative information, that information may be redacted pursuant to 708(b)(16)." (Final Determination at 6 (quoted in Requester's Br. at 10).) First, we note that the Final Determination ordered the PSP to disclose the Incident Report *"without redaction."* (Final Determination at 8 (emphasis in original).) Second, we note that, where a record falls within an exemption under Section 708(b), it is not a public record as defined by the RTKL and an agency is not *required* to redact the record. *Department of Health v. Office of Open Records,* 4 A.3d 803, 814–15 (Pa. Cmwlth.2010). Therefore, any argument that the PSP *must* redact the Incident Report to provide the information that would be contained in a police blotter fails.

■ Underlying the arguments in the briefs of the OOR, the Requester, and the Pennsylvania Newspaper Association is a concern that the kind of information contained in police blotters should be accessible to the public so that the public can hold law enforcement agencies accountable in the execution of such agencies' core functions. This Court agrees that both the CHRIA and the RTKL convey a strong

public policy interest in maintaining the accessibility of police blotter information to the public. The CHRIA expressly states that police blotters are public records. Section 9104 of the CHRIA, 18 Pa.C.S. § 9104. Similarly, Section 708(b)(16) expressly excludes police blotters, as defined by Section 9102 of the CHRIA, from the criminal investigative record exemption. 65 P.S. § 67.708(b)(16). These provisions show a strong legislative intent that the public should have access to "[a] chronological listing of arrests, usually documented contemporaneous with the incident, which may include, but is not limited to, the name and address of the individual charged and the alleged offenses." 18 Pa. C.S. § 9102.[8] In this case, the PSP has averred that it does not maintain a police blotter. (RTKL Liaison Verification For PSP/RTKL Request No. 2009–0073, R.R. at 13a ("The Pennsylvania State Police does not create, maintain, or disseminate a 'police blotter'....").) However, at argument, when asked how the PSP kept track of a listing of arrests, counsel for PSP responded that such information was tracked electronically, but that individual stations do not maintain logs. We note that the definition of a "record" under the RTKL includes "information stored or maintained electronically." 65 P.S. § 67.102. We further note that the Legislature has manifested a clear intent, as evidenced in the RTKL and the CHRIA, that police blotter information (i.e., chronological listings of arrests) be made available to the public.

8. We are aware that this Court has held that disclosure of police blotters must be sought through the RTKL and cannot be compelled through the CHRIA. *Lebanon News Publishing Co.*, 451 A.2d at 268. In *Lebanon News Publishing Co.*, this Court stated:

Section 9104 of the [CHRIA], 18 Pa.C.S. § 9104, provides the following with regard to police blotters:

(a) *General rule.*—Except for the provisions of Subchapter B (relating to completeness and accuracy), Subchapter D (relating to security) and Subchapter F (relating to individual right of access and review), *nothing in this chapter shall be construed to apply to*:

(1) Original records of entry compiled chronologically, including, but not limited to, *police blotters.*

. . . .

(b) *Court dockets and police blotters.*— Court dockets and police blotters and information contained therein shall, for the purpose of this chapter, be considered public records. (Emphasis added.)

Thus, we learn that only Subchapters B, D and F of the [CHRIA] apply to police blotters and that police blotters are deemed to be "public records" by the [CHRIA]. It is Subchapter *C* of the [CHRIA], 18 Pa.C.S. §§ 9121–25, however, which applies to the dissemination of information under the [CHRIA]. Since Subchapter C does *not* apply to police blotters, we must conclude that their dissemination is not required by the [CHRIA]. This conclusion is buttressed by the fact that Subchapter C addresses only public access to "criminal history record information", which term is defined so as to specifically *exclude* records such as police blotters. *See* Section 9102 of the [CHRIA], 18 Pa.C.S. § 9102.

In view of our conclusion that the [CHRIA] does not require that police blotters be disseminated to the public, we also rule that the [CHRIA] does not provide sanctions or damages where access to such information is denied. This does not mean, however, that the public is not entitled to access to police blotters.

Although the [CHRIA] does not itself require that police blotters be made available to the public, it does provide that such information be considered "public records." Thus, we think access to police blotters is controlled by the [Prior Law].

*Id.* at 268 (emphasis and omission in original). Although the Prior Law has been repealed and replaced with the RTKL, the provisions of the CHRIA relied upon by this Court in *Lebanon News Publishing Co.* remain the same. Thus, disclosure of police blotters cannot be obtained through the enforcement provisions of the CHRIA but, instead, must be sought through the RTKL.

However, as discussed above, after our examination of the Incident Report before us, we are convinced that it is a criminal investigative record, and not a public record. Therefore, it is not required to be disclosed under the RTKL, even in redacted form. Accordingly, we reverse the Final Determination of the OOR.

Judge BROBSON did not participate in the decision in this case.

### ***ORDER***

**NOW**, September 16, 2010, the order of the Office of Open Records in the above-captioned matter is hereby **REVERSED**.

### DISSENTING OPINION BY Judge PELLEGRINI.

The central issue in this appeal is whether a routine incident report completed by a trooper with the Pennsylvania State Police (PSP) qualifies under the criminal investigation records exemption found in Section 708(b)(16) of the Right–to–Know Law (RTKL).[1] Because an incident report does not qualify as criminal investigative material, I respectfully dissent.

Pursuant to the RTKL, a record in the possession of a Commonwealth agency such as the PSP is presumed to be public and subject to disclosure unless the agency proves by a preponderance of the evidence that it is exempt under Section 708, exempt under other Federal or State law, or protected by privilege. 65 P.S. §§ 67.305(a), 67.708(a)(1). The exemption for criminal investigative materials is found at Section 708(b)(16), which provides in pertinent part:

(b) Exceptions.—Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:

. . .

(16) A record of an agency relating to or resulting in a criminal investigation, including:

. . .

(iii) Investigative materials, notes, correspondence, videos and reports.

. . .

This paragraph shall not apply to information contained in a police blotter as defined in 18 Pa.C.S. § 9102. . . .

65 P.S. § 67.708(b)(16). In its Final Determination, the Office of Open Records (OOR) granted requester's appeal and directed the PSP to release an unredacted copy of the incident report because, pursuant to this Court's opinions in *Commonwealth v. Mines*, 680 A.2d 1227 (Pa. Cmwlth.1996), and *Tapco, Inc. v. Township of Neville*, 695 A.2d 460 (Pa.Cmwlth. 1997), incident reports are equivalent to police blotters, which are not part of the criminal investigative exemption. Unlike the majority, I would require the PSP to release a copy of the incident report to requester because the incident report does not qualify as part of the agency's criminal investigative materials and is not exempt from public access.

As the Commonwealth agency which received the right-to-know request, the burden was on the PSP to prove by a preponderance of the evidence why the requested record was exempt. In its initial denial letter, the PSP merely stated that the requested incident report qualified as a criminal investigative record and was, therefore, exempt under Section 708(b)(16) of the RTKL. The PSP provided no guidance as to why the report qualified as investigative material or what specific information included in the report was not subject to public access. The OOR's appeals officer sent a letter to the

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(16).

PSP inviting the agency to provide additional information or evidence to support its allegation that the incident report was not merely a police blotter, and how releasing the names of the actors and victims involved in the incident would "result in substantial and demonstrable risk of physical harm to or personal security of the victim." The PSP responded by submitting a letter in which it simply disputed that the incident report was the equivalent of a police blotter. However, the PSP failed to provide any additional reasoning why this particular incident report was an investigation, not merely the equivalent of a police blotter.

As a preliminary matter, the burden was on the PSP, as the agency responding to the right-to-know request, to make a showing of why the report qualified as part of a criminal investigation rather than a police blotter, or why sensitive information in the report could not be redacted. Simply because a form is entitled "incident report" does not mean that it relates to an actual criminal investigation as required to meet the exemption. For example, if a police officer responds to the scene of a routine automobile accident which does not involve injuries or lead to an investigation into potential criminal wrong-doing, he or she will later complete a write-up outlining that an incident occurred. This report may very well be called an incident report by that officer and his or her department, but because it did not relate to or result in a criminal investigation, it would not fit the exemption found in Section 708(b)(16) of the RTKL. The PSP should have explained in its denial to requester and the resulting appeal to the OOR exactly how and why the incident report at issue in this case qualified as criminal investigative material rather than making the blanket assertion that every single incident report generated by its troopers fit the exemption, regardless of content.

The specific incident report at issue in this case contains very little information, and I disagree with the majority's conclusion that it falls in the category of investigative material. The terms "incident" and "investigation" are not, by any means, synonymous and connote varying levels of police involvement. The term "investigate" is defined as "to observe or study by close examination and systematic inquiry; to make a systematic examination; to conduct an official inquiry." Merriam–Webster's Collegiate Dictionary 659 (11th ed.2004). By its definition, the term implies detailed observation and inquiry over a period of time, which would amount to a high level of police involvement or activity. On the contrary, the term "incident" implies a one-time encounter, as it is defined as "a discrete occurrence or happening." Black's Law Dictionary (8th ed.2004). The incident report at issue does not document a criminal investigation. The report contains the names and addresses of the actors involved, a synopsis of what the trooper observed and was told, and statements of the victims and a witness. It is merely the initial form the trooper fills out to show the "who, what, where and when" that any observer of the scene could discern without investigation. In short, it merely recounts the particular *incident* that the trooper responded to on this occasion. It does not, as the majority argues, document the trooper's investigation of a criminal case or outline his official inquiry.

In addition, exemptions from disclosure under the RTKL must be narrowly construed. *See Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa.Cmwlth. 2010) (citations omitted). Reports which merely relay the happenings of a particular incident to which police respond are commonly made available upon request. It would be an absurd result if the new RTKL, which was "designed to promote

access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions," instead restricted public access to these readily available documents by now making them exempt from disclosure. *Id.*

The PSP does not dispute that "police blotters," which are expressly excluded from the investigative exception, no longer exist and incident reports have supplanted them. If investigative material seeps into the incident report or other matter contained in the report is protected, the PSP is not authorized to withhold the entire document but may redact those portions that are subject to the investigative or personal exception. 65 P.S. § 67.706.

Given these reasons, I disagree with the majority's conclusion that the incident report qualified as criminal investigative material and was, therefore, exempt from public access, and I respectfully dissent.