# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| James Sporish, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 421 C.D. 2014 |
| | : | Submitted: July 11, 2014 |
| Springfield Township | : | |

BEFORE:  HONORABLE BERNARD L. McGINLEY, Judge
HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE P. KEVIN BROBSON, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON                    FILED:  August 27, 2014

In this matter arising under the Right to Know Law (RTKL),[1] Appellant James Sporish (Sporish) appeals from an order of the Court of Common Pleas of Delaware County (trial court).  The trial court denied the appeal Sporish filed after the Delaware County District Attorney's Office failed to issue a final determination within thirty days of Sporish's challenge of the denial of his RTKL request by the designated RTKL officer of Springfield Township (Township).  We now vacate the trial court's order and remand the matter to the trial court.

In a RTKL request dated March 6, 2013, and addressed to the Township's RTKL Officer, Sporish sought "[a]ny and all police incident reports on Kristine Marie Gregg" further identifying her by her date of birth and social

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-.3104.

security number. In that request Sporish asserted a right to the records based upon his claim that incident reports are the equivalent of police blotter reports, which, he contended, are subject to disclosure under the RTKL. On March 15, 2013, the Township's RTKL Officer responded to Sporish's RTKL request, concluding that the documents Sporish requested are "not considered Police Blotter issues." The RTKL Officer relied upon statutory exemptions relating to criminal and noncriminal investigations, Sections 708(b)(16) and (17) of the RTKL, 65 P.S. § 67.708(b)(16) and (17), but did not explain the rationale underlying the determination. The RTKL Officer also advised Sporish of his right to appeal the determination with the appropriate entity identified for appeals under Section 503(d) of the RTKL, 65 P.S. § 67.503(d).[2]

On or about March 28, 2013, Sporish apparently filed an appeal with the Delaware County District Attorney's Office. In the appeal, Sporish asserted that, in reviewing his appeal from the determination of the Township's RTKL Officer, the District Attorney's Office (or rather, the appeals officer designated by the District Attorney's office) should consider that the Township failed to satisfy its burden of proof regarding the alleged exempt status of the records sought. Sporish asserted that the Township failed to demonstrate that the records are

---

[2] On or about March 20, 2013, Sporish first filed an appeal with the Office of Open Records (OOR). On or about March 24, 2013, Sporish filed a "supplemental appeal" with OOR. On March 25, 2013, OOR dismissed the appeal, based on its determination that OOR lacked jurisdiction over RTKL requests involving local agency criminal investigative records and that the Delaware County District Attorney had jurisdiction over the appeal. Section 503(d)(2) of the RTKL, provides that the "district attorney of a county shall designate one or more appeals officers to hear appeals . . . relating to access to criminal investigative records in possession of a local agency of that county." Section 503(d)(2) of the RTKL also provides that the designated appeals officer "shall determine if the record requested is a criminal investigative record."

2

investigative rather than police blotters. Sporish challenged the apparent reliance by the Township's RTKL Officer on the caption of the records rather than the content of the records in reaching what Sporish characterized as an essentially conclusory determination. Sporish also included an attempt to clarify the records he wanted: "[A] chronological listing of incident[s] involving Kristine Marie Gregg, whether there was an arrest or not . . . ."

Sporish relied upon the provisions of the Criminal History Records Information Act, 18 Pa. C.S. §§ 9101-9183 (CHRIA), which defines the term "police blotter" to encompass a chronological listing of arrests that may also include the name and address of an individual charged with a criminal offense and the specific offense charged, 18 Pa. C.S. § 9102, and makes police blotters public records. Sporish asserted that "this appeal office should grant [his] appeal and order [the Township] to produce copies of chronological listing of incidents involving Kristine Marie Gregg." Sporish also noted that

> if this office finds it necessary to request additional information from [the Township], to prove by a preponderance of evidence, that the requested documents are investigative and not simply police blotter information, it should request them to provide evidence to each of the (14) reports so there is no confusion about whether or not they are disguising police blotter information under the title "incident reports" so they can deny access to public records.

(S.R.R. at 20b.)

On or about May 6, 2013, Sporish filed with the trial court a "petition for judicial review of a local agencies [sic] denial of petitioners [sic] right to know request." In his petition, Sporish averred that the District Attorney's appeals officer did not issue a final determination regarding his appeal. Sporish repeated his contention that he was asking only for a chronological listing of incidents

3

involving Kristine Marie Gregg, regardless of whether such incident or incidents resulted in an arrest, and that the Township was in possession of fourteen "of these incident[s]." (S.R.R. at 31b.) Sporish again relied upon CHRIA's provisions relating to police blotters, arguing that the trial court could not base a decision merely upon the title attached to a record in reaching a determination as to whether a record was an exempt criminal investigative record or simply a police blotter.

In response, the Township denied Sporish's averments. The Township asserted that the Township does not maintain a police blotter. The Township also argued that the records Sporish sought constituted more than a police blotter, and, therefore, the records constituted criminal investigative records, which are not public records—*i.e.*, not subject to disclosure. On September 19, 2013, the Township submitted proposed findings of fact and conclusions of law to the trial court, which included a conclusion of law asserting that the incident reports contain more information than that contained in a police blotter, and, thus, the incident reports were exempt from disclosure.

The trial court did not conduct a hearing or in camera review of the incident reports. Rather, the trial court adopted the proposed findings of fact and conclusions of law the Township submitted, and it issued an order denying Sporish's RTKL request. Sporish appealed the trial court's decision, and the trial court issued an opinion in support of its order. In its opinion, the trial court simply accepted the Township's averments regarding the content of the incident reports, specifically the averment that such reports consist of more than simply a chronological listing of incidents—*i.e.*, a police blotter. Based on that isolated conclusion, the trial court determined that the incident reports were exempt from disclosure under Section 708(b)(16) of the RTKL.

Sporish raises the following issues in his appeal to this Court:[3] (1) whether the trial court abused its discretion by failing to conduct an in camera review of the requested records before denying his request; (2) whether the trial court erred in failing to consider a copy of an earlier letter Sporish received from the Township, in which the Township indicated that it could provide him with the fourteen incident reports if he paid a total of $280.00 for the reports; (3) whether the Township bore the burden to prove by a preponderance of the evidence to the trial court that each incident report was exempt under the RTKL, and the trial court thereby abused its discretion or erred as a matter of law; and (4) whether the trial court should have reviewed the requested incident reports and, if they did

---

[3] As noted above, Section 503(d)(2) of the RTKL requires the district attorney's office to designate an appeals officer to hear appeals from a local agency's denial of a RTKL request relating to records that potentially constitute "criminal investigative" records. Thus, at least with regard to local agency matters arising in potential criminal investigations, that designated appeals officer acts in the capacity that an OOR appeals officers would typically act under the RTKL with regard to other appeals from an agency's open records officer's determination. (We note here that one could hypothesize a chicken and egg quandary, because an initial question could be whether a requested record is a "criminal investigative" record, but the General Assembly appears to have resolved the question by placing with the district attorney designated appeals officer the task of resolving the question of whether any record *may* constitute a "criminal investigative" record. Thus, it would appear that any police record that may relate to a possible criminal investigation, even one that contains little criminal information, is subject to review by the district attorney appointed appeals officer.) In contrast to situations where an OOR appeals officer has jurisdiction to render a final determination, a requester seeking review of a final determination by a designated appeals officer appointed by a district attorney's office is entitled to judicial review by the appropriate court of common pleas under Section 1302 of the RTKL, 65 P.S. § 67.1302. In such circumstances, the trial court, as here, is charged with the duty to render its own findings of fact and conclusions of law, and this Court in addressing such an appeal, exercises a standard of review limited to considering whether the trial court erred as a matter of law or abused its discretion by rendering findings of fact that are not supported by substantial evidence.

constitute records exempt from disclosure, order redaction of the records to remove information from the records that is exempt.

In *Pennsylvania State Police v. Office of Open Records*, 5 A.3d 473 (Pa. Cmwlth. 2010) (*PSP*), *appeal denied*, 76 A.3d 540 (Pa. 2013), we reviewed the decision of an OOR appeals officer, who evaluated a request for police "incident reports" and relied upon earlier decisions of this Court in *Commonwealth v. Mines*, 680 A.2d 1227 (Pa. Cmwlth. 1996), *appeal denied*, 690 A.2d 238 (Pa. 1997), and *Tapco, Inc. v. Township of Newville*, 695 A.2d 460 (Pa. Cmwlth. 1997). The appeals officer construed the holdings in these two decisions to mean that police blotters (which are considered public records and subject to disclosure) were the equivalent of police "incident reports." The appeals officer in that case, without having or requesting the opportunity to examine the reports for which the requester had sought disclosure, concluded that, based on *Mines* and *Tapco*, the "incident reports" the requester sought were the equivalent of police blotters, and, therefore, were public records subject to disclosure under the RTKL.

In *PSP*, we first entertained argument regarding the question of whether the requested incident reports were public records like police blotters. The record then before the Court only included the request, the response from PSP, and affidavits regarding the nature of the incident reports. Following argument, we directed PSP to submit the requested incident report for in camera review. *Id.* at 477. With the enhanced record, we analyzed the characteristics of the incident reports and the affidavits PSP submitted in light of the statutory language contained in the criminal investigation exception in Section 708(b)(16) of the

6

RTKL.  We held that neither *Mines* nor *Tapco*, supported the conclusion that an incident report is necessarily the equivalent of a police blotter:

> [W]e cannot say that those incident reports [in *Mines* and *Tapco*] are the same as the PSP's Incident Report in this case.  This Court cannot make determinations about whether a given document is a public record merely based on the name or title of the document; we must consider, instead, the content and nature of the document.  To do otherwise would elevate form over substance . . . .  Having examined the Incident Report in this case, we are convinced the Incident Report is not a "chronological listing of arrests."  18 Pa. C.S. § 9102.  Rather, it is a description of an investigation by the PSP into a complaint of criminal activity.  In addition, we note that a PSP incident report may be generated even in the absence of an arrest: the blank incident report form includes checkboxes indicating that an incident may be disposed of as "cleared by arrest," "unfounded," or "exceptionally cleared." (PSP Incident Report form SP 7-0050 (4-2007), Requester's Br. Ex. D.)

*PSP*, 5 A.3d at 482.

In *PSP*, we noted that the incident reports at issue included notes of interviews with alleged victims and witnesses and that the incident report form contained "checkboxes regarding whether certain investigative tasks" had been "carried out or whether certain information was discovered."  *Id*. at 479.  We commented that "[t]he above information was assembled as a result of an investigation into a criminal incident or an allegation of criminal wrongdoing.  Therefore, the Incident Report is a report of criminal investigation."  *Id*.  We noted in a footnote that the copy of a blank incident report included questions such as (1) whether a suspect could be named, (2) whether evidence at the scene could be linked to an offender, (3) whether any latent prints were discovered, (4) whether any witnesses were located, and (5) whether any unique method or pattern of

7

commission was identified. *Id.* n.6. We concluded that "[w]hether these questions are answered yes or no, such answers would disclose information assembled as a result of an investigation into a criminal incident or an allegation of criminal wrongdoing, and modus operandi information." *Id.*

Keeping in mind that a local agency bears the burden of proof to show that records sought by a requester fall within an exemption under the RTKL, Section 708(a) of the RTKL, 65 P.S. § 67.708(a), where factual issues exist relating to the nature of the records requested, a trial court's factual findings must reflect some evidence submitted by the local agency in support of its position. In this case, the record is devoid of evidence. Unlike the record this Court considered in *PSP*, the record here indicates that the trial court did not conduct in camera review and that the Township did not submit a copy of a blank incident report form. Nor did the Township submit any affidavits, which this Court in *Mitchell v. Office of Open Records*, 997 A.2d 1262 (Pa. Cmwlth. 2010), accepted as evidence in support of OOR's decision concluding that records were exempt under Section 708(b)(16) of the RTKL. Here, the trial court simply accepted as fact the Township's legal position that the records Sporish requested constituted records containing more than the information contained in a police blotter, and that, therefore, the records must necessarily constitute criminal investigative reports exempt under the RTKL.

This reflects the primary fallacy of the Township's and the trial court's reasoning. Although the RTKL specifically provides that police blotters are public records, the reasoning relied upon here by the trial court makes the unsupported leap that *any* records that contain more information than that contained in a police blotter constitute criminal investigative reports. As in *PSP*,

8

however, the trial court had no way to know exactly what information the incident reports contain. They may very well contain criminal investigative information like the incident reports in *PSP*, but there is simply no way to know whether that is correct without having evidence on the content of the reports.[4]

Based upon our review of the record, such as it is, we conclude that the trial court's factual findings are not supported by evidence of record. In turn, there are insufficient findings to support the trial court's legal conclusions. Therefore, in following our actions in *PSP*, we must vacate the trial court's order and remand the matter to the trial court with the direction to open the record for evidence, including, if necessary, in camera review of the requested incident reports. Once the record is closed, the trial court must make new factual findings regarding the nature of the incident reports and new conclusions of law.

P. KEVIN BROBSON, Judge

---

[4] We recognize that Sporish initially requested simply "all incident reports on Kristine Marie Gregg," and that Sporish, in his appeal following the initial denial by the Township's RTKL Officer, apparently modified his request. As we noted above, Sporish indicated that he was seeking records that provide dates of alleged incidents relating to Ms. Gregg to which the police responded, and any offenses charged or arrests made. Sporish attached to his supplemental appeal originally filed with OOR a copy of "Incident Reports" pertaining to Ms. Gregg. This copy lists in chronological fashion and paragraph format eleven incidents of complaints pertaining to Ms. Gregg. It is not clear that these incident reports Sporish attached are the same incident reports the Township claims are exempt. This is an issue for the trial court to resolve.

9

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

James Sporish,               :

         Appellant     :

                        :

        v.             :    No. 421 C.D. 2014

                        :

Springfield Township     :

# **O R D E R**

AND NOW, this 27th day of August, 2014, the order of the trial court is VACATED, and the matter is REMANDED to the trial court for additional proceedings consistent with the accompanying opinion.

Jurisdiction reqlinquished.

_____

P. KEVIN BROBSON, Judge